U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 2 3 2009

ROBERT H. SHEMWELL, CLERK
BY _____
          DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| MONROE FIREFIGHTERS<br>ASSOCIATION, ET AL. | CIVIL ACTION NO. 06-CV-1092 |
| v. | JUDGE ROBERT G. JAMES |
| CITY OF MONROE | MAG. JUDGE KAREN L. HAYES |

## RULING

This action was brought on June 27, 2006, by approximately 148 former and current

firefighters alleging, among other claims, that their employer, the City of Monroe (the "City"),

failed to pay them overtime pay, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et

seq.* ("FLSA").

In this, the first of five dispositive motions,[1] the City filed a Motion for Partial Summary

Judgment [Doc. No. 51] on the overtime claims by nineteen Plaintiffs who served as Deputy

and/or District Fire Chiefs during the relevant time period[2]: Harold Arrant, Bruce Moore, Daniel

Saterfield, James Bellard, Ralph May, Michael Meeks, James Tate, Charles McGuire, Bryan

Nugent, Larry Maxey, William Dale Finkbeiner, Charles Finkbeiner, Edgar Wink, James Parrott,

David Wallace, Tim Dickerson, Mark McConaughey, David Ponthieux, and Peter Bacle. The

---

[1]Plaintiffs have filed their own Motion for Summary Judgment [Doc. No. 84] on the
City's counterclaim. The Court will address the remaining dispositive and other motions
separately.

[2]Since Plaintiffs brought suit on June 27, 2006, the relevant time period is the two-year
period between June 27, 2004, and June 27, 2006. *See* 29 U.S.C. § 255(a). Some of the
Plaintiffs served as both District and Deputy Fire Chiefs during that time.

City contends that these Plaintiffs are exempt from overtime pay because they meet the standards for the executive and/or administrative exemptions. [Doc. Nos. 51, 64 & 94].

Plaintiffs have filed memoranda in opposition to the City's Motion for Partial Summary Judgment and deny that they are exempt from overtime pay. [Doc. Nos. 57 & 73]. They contend that they did not perform the duties necessary to meet the standards for the executive or administrative exemption and that the City's actions destroyed their salary basis of pay.

Having reviewed all briefs filed and evidence submitted, the Court finds that the City's Motion for Partial Summary Judgment should be GRANTED.

## I.  FACTS

### A.  Organization of the Monroe Fire Department

The Monroe Fire Department ("MFD") is a department within the City. Since 1998, Jimmie Bryant has served as the Fire Chief ("Chief Bryant"), the highest ranking officer of the MFD. Chief Bryant reports directly to the Mayor. [Doc. No. 51, Exh. A, Chief Bryant Aff. ¶ 1].

The MFD is divided into various divisions as set forth in the MFD Rules and Regulations (the "Rules"). [Doc. No. 51, Exh. A, Chief Bryant Aff. ¶¶1 & 2]. The largest division in the MFD, totaling about 158 employees, is the fire suppression division.[3]

Firefighters work shifts. The fire suppression division has a total of three shifts: A-shift, B-shift, and C-shift. Each of the three shifts alternates days worked; e.g., A-shift on Monday, B-shift on Tuesday, and C-shift on Wednesday, and then the system repeats. Each shift works one 24-hour tour of duty and then has two days off.

Directly below Chief Bryant are the deputy fire chiefs ("Deputy Chief" or "Deputy

---

[3]In Article III of the Rules and Regulations, this division is referred to as the fire fighting department. *See* [Doc. No. 51, Ex. A, 108-0979].

-2-

Chiefs."). A Deputy Chief is assigned to each shift, so that one Deputy Chief is on duty at all times. The fire suppression division is sub-divided into three geographically distinct districts, and each of the three districts has three separate fire stations.

Below the Deputy Chiefs are the three district fire chiefs ("District Chief" or "District Chiefs"). District Chiefs are the commanding officers for each of the geographic districts and report directly to the Deputy Chiefs.

## B.    Duties of Deputy Chiefs

Deputy Chiefs report directly to Chief Bryant and are ultimately responsible for all three districts during their shifts. Since 2005, Chief Bryant has held an Executive Staff Meeting ("ESM") every Monday morning, which all on-duty Deputy and District Chiefs attend. In May 2006, Chief Bryant began holding daily meetings with the Deputy Chiefs to discuss the activities of each division and communicate information among the different divisions and districts.

Deputy Chiefs must maintain staffing levels of all three districts. They complete MFD daily staffing logs, which record the shifts worked by each firefighter and track the vacation days, sick days, and time trading. As part of their staffing duties, the Deputy Chiefs call firefighters in to work extra time. While not directly involved in budgeting or setting policy on extra time, the staffing decisions made by Deputy Chiefs affect the overall budget of the MFD.

Deputy Chiefs must ensure that firefighters in all three districts obtain the necessary number of hours of training and must coordinate the movement of trucks for classes, drills, and training. They can also schedule tactical drills.

Deputy Chiefs do not typically attend fires or participate in firefighting, although they

-3-

may occasionally report to an emergency scene, such as a working fire or a hazardous materials incident. Deputy Chiefs can serve as an Incident Commander.[4] The IC supervises activities to mitigate the emergency and has the discretion to order or reduce manpower and equipment and to make decisions on how best to correct the situation. Usually, however, the District Chiefs serve as the IC, and the Deputy Chiefs provide support, including calling in additional personnel, if needed.

Deputy Chiefs supervise the District Chiefs and have the authority and discretion to override their decisions and the decisions of captains. Deputy Chiefs also preform evaluations of probationary District Chiefs. Deputy Chiefs have authority and do, at times, address grievances of both employees and the public.

## C. Duties of District Chiefs

District Chiefs are responsible for the overall operation of the three fire stations in their respective districts. There are three to four apparatuses and fire engines at each fire station. A Captain, a Lieutenant, and a Private[5] are assigned to every fire engine. Each District Chief supervises at least three Captains, Lieutenants, and Privates.

District Chiefs visit the stations under their supervision, determine if the firefighters are properly dressed and if the trucks have been inspected, handle any necessary administrative

---

[4]It was not common for Deputy Chiefs to serve as an IC. *See* [Doc. No. 51, Depo. of Charles Finkbeiner, Exh. P, p. 15 (Deputy Chiefs "very seldom" act as an IC.)].

[5]On the organizational charts, below District Chiefs are Fire Captains, Fire Drivers, and Fire Fighters. The Court assumes that Drivers and Fighters correspond to Lieutenants and Privates.

paperwork, and review supply requests by fire stations to determine if they are excessive.[6]  On-duty District Chiefs attend and sometimes prepare Powerpoint presentations for the Monday morning ESM.

District Chiefs evaluate the performance of probationary captains, address and resolve employee complaints and grievances, and are authorized to and do recommend disciplinary actions for subordinates.  They also counsel subordinates directly.

In addition, District Chiefs are responsible for ensuring the safety and security at the fire stations under their command.  They have the discretion and authority to require the fire stations and captains to engage in fire drills to improve the firefighters' skills and do order drills from time to time.

District Chiefs respond to most, but not all, emergency calls, but are not engaged in front-line fire fighting.  Even if they are not dispatched, District Chiefs have the discretion to travel to an emergency scene.  When a District Chief responds to an emergency, whether a fire or an emergency medical call, he serves as the IC.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

"Summary judgment is appropriate [if the summary judgment evidence shows] 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Mello v. Sara Lee Corp.*, 431 F.3d 440, 443 (5th Cir. 2005) (quoting FED. R.

---

[6]While District Chief Tim Dickerson testified that requests for supplies just "come through" him, the testimony of other District Chiefs show that they had the authority to review the requests if they chose to do so. [Doc. No. 57, Depo. of Tim Dickerson, Exh. 10, p. 104].

CIV. P. 56).

If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). "The nonmoving party, however, 'cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Id.* (quoting *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004)).

## B. The FLSA

In general, the FLSA requires employers to pay overtime compensation to employees who work more than forty hours per workweek. 29 U.S.C. § 207(a)(1) (2004). Section 207(k) of the FLSA provides an exemption from the 40-hour-week threshold for employees in "fire protection activities." 29 U.S.C. § 207(k) (2009). Pursuant to Section 207(k), the City's fire suppression employees have collectively bargained for a 21-day work period. [Doc. No. 51, Exh. A-2, § XVI, p. 6]. The Section 207(k) 21-day work period "provides a partial overtime pay exemption for fire protection . . . personnel who are employed on a work period basis." 29 C.F.R. § 553.201 (2009). The City is not required to pay overtime compensation to fire suppression employees unless they work more than 159 hours in the 21-day work period. 29 C.F.R. § 553.230 (2009).

However, individuals "employed in a bona fide executive, administrative, or professional capacity" are completely exempt from overtime compensation. 29 U.S.C. § 213(a)(1) (2004).

-6-

"The decision whether an employee is exempt from the FLSA's overtime compensation provisions under 29 U.S.C. § 213(a)(1), is primarily a question of fact . . . However, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330-31 (5th Cir. 2000). Thus, the Court "first asserts findings of historical fact," then "must make inferences from the facts in applying the [Department of Labor] regulations and interpretations," and, finally, "must make the . . . determination of whether an employee was exempt." *Id.* at 331 (citation omitted).

The employer has the burden to prove that an employee is exempt under the FLSA, and that exemption is construed narrowly against the employer. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002) (citing *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990)). "A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." 29 C.F.R. § 541.2 (2004). Thus, to establish exempt status, the employer must show that the employee meets both the FLSA's "salary" test and the appropriate "duties" test for the exemption which purportedly applies. *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 262 (5th Cir. 2000).

In this ruling on this Motion, the Court must address (1) whether Plaintiffs met the

requirements of the FLSA salary test[7], (2) whether Plaintiffs otherwise met the requirements of the executive exemption, and (3) whether Plaintiffs otherwise met the requirements of the administrative exemption.

## 1.    Were Plaintiffs Paid on a Salary Basis?

The Secretary of the Department of Labor ("the Secretary") has established regulations defining and explaining what constitutes the salary basis of pay. "An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reductions because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a) (2009); *see also* 29 C.F.R. § 541.118(a)-(a)(1) (2003) (substantially similar regulation).[8] The "exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R.

---

[7]As discussed, *infra*, the salary test is the same for the executive and administrative exemptions.

[8]There are recognized exceptions to the no-docking or no-deductions rule. The parties both cited the relevant provisions on disciplinary deductions, which allow employers to take deductions from an otherwise exempt employee's salary (1) as a penalty imposed in good faith for infractions of safety rules of major significance, rules "relating to the prevention of serious danger in the workplace or to other employees," 29 C.F.R. § 541.602(b)(4); and (2) as an unpaid disciplinary suspension of one or more full days for infractions of workplace conduct rules, if imposed pursuant to a written policy applicable to all employees, 29 C.F.R. § 541.602(b)(5). The City has also cited the Court to the public accountability exception, 29 C.F.R. § 541.710(a). *See also* 29 C.F.R. § 541.5d (1993) (same regulation under old numbering system). However, the Court's analysis on Plaintiffs' salary basis of pay negates consideration of any of these exceptions. Other potential exceptions are clearly irrelevant. *See, e.g.,* 29 C.F.R. § 541.602(b)(1)-(3), (6)-(7).

§ 541.602(a) (2009); *see also* 29 C.F.R. § 118(a) (2003).

Plaintiffs' claims in this matter overlap the Secretary's August 23, 2004 amendments to the FLSA regulations. The former regulations, and interpretation of those regulations, apply to the first two months of the relevant time period, between June 26, 2004, and August 23, 2004.

Prior to August 23, 2004, the Supreme Court's interpretation of the salary-basis test in *Auer v. Robbins*, 519 U.S. 452 (1997), was controlling precedent. In that case, the Supreme Court adopted the interpretation of the Secretary in an *amicus* brief[9] that an otherwise exempt employee will lose his salaried status if he is "covered by a policy that permits disciplinary or other deductions in pay as a practical matter, that is, if the employer has "an actual practice of making such deductions or an employment policy that creates a significant likelihood of such deductions." *Id.* at 461 (internal quotation marks omitted).

However, on August 23, 2004, the Secretary issued new regulations. Although the changes to the salary basis regulation were merely grammatical and stylistic, not substantive, *cf.* 29 C.F.R. § 541.118(a) (2003) to 29 C.F.R. § 541.602 (2009), the Secretary issued a new regulation explaining what it means for an employee to be "subject to" improper deductions:

> An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An **actual practice** of making improper deductions demonstrates that the employer did not intend to pay employees on a salary

---

[9]"[T]he salary-basis test is a creature of the Secretary['s] own regulations," and, thus, "his interpretation of [the test] is . . . controlling unless plainly erroneous or inconsistent with the regulation." 519 U.S. at 461 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989) (internal quotation marks and other citations omitted)).

basis.[10] The factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.

29 C.F.R. § 541.603(a) (2009) (emphasis added). Subsection (b) provides if an "employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions." 29 C.F.R. § 541.603(b) (2009).

Pursuant to the collective bargaining agreement ("CBA") between the City and the local union, firefighters are paid semimonthly and in accordance with a salary schedule. [Doc. No. 51, Exh. A-2, § XXII, at p. 8]. Plaintiffs admit that the predetermined amounts on the salary schedules were sufficient for the exemptions to apply.[11]

However, the parties dispute whether the City had a policy of deducting twelve hours compensation from firefighters if they "missed out." Plaintiffs contend that these allegedly

---

[10] *Cf.* 519 U.S. at 461 ("The Secretary's approach rejects a wooden requirement of actual deductions, but in their absence it requires a clear and particularized policy-one which 'effectively communicates' that deductions will be made in specified circumstances.").

[11] While the regulations are written in terms of a weekly salary, the requirement will be met if the employee is compensated . . . semimonthly on a salary basis of $985.83, or monthly on a salary basis of $1,971.66." 29 C.F.R. § 541.600(b) (2009). From June 27, 2004, to April 2005, the fixed base monthly salary was $2,107.50 for Deputy Chiefs and $1,967.00 for District Chiefs. Beginning in April 2005, the fixed base monthly salary was $3,000.00 for Deputy Chiefs and $2,800.00 for District Chiefs.

improper deductions destroyed the salary basis of pay for Deputy and District Chiefs, and, thus, they are not exempt.

Firefighters work 24-hour shifts. If they are not at work by 8:00 A.M., they have missed out, i.e., are late to work, which is considered a serious safety violation.[12] According to Plaintiff, the City had a policy of sending any firefighter who missed out home for twelve hours, until 8:00 P.M., and subjecting him to a disciplinary docking of twelve hours of pay. Plaintiffs contend that this policy was applicable to all firefighters, no matter their classification.

The City denies that it had such a policy and denies that Chief Bryant ever authorized partial day deductions. The City further argues that, even if such a policy exists, partial day deductions were permissible.

The Court has reviewed and considered the documentary evidence, the testimony of four former Deputy and District Chiefs relied upon by Plaintiffs, the declaration of current Deputy Chief Dale Finkbeiner ("D. Finkbeiner")[13], and the testimony of Chief Bryant and current Deputy

---

[12]It appears to be undisputed that a miss out is considered a serious safety violation. Plaintiffs have suggested that the City could not deduct less than one full day pay, even for a serious safety violation. Their argument is inconsistent with the plain language of the regulation, but the City has not argued that it was entitled to impose a twelve-hour deduction from pay as a penalty imposed in good faith for infraction of a safety rule of major significance. 29 C.F.R. § 541.602 (b)(4) (2009). The Court does not discount the seriousness of a missing firefighter to the safety of all firefighters on that shift, but, without specific argument, declines to address whether this type of tardiness is a "safety rule of major significance."

[13]The City refers to Deputy Chief Dale Finkbeiner as "William Finkbiner" or "W. Finkbiner." However, based on his declaration and the letterhead of the MFD, this Plaintiff uses his middle name, and his last name is correctly spelled "Finkbeiner." Mike Finkbeiner is also a Deputy Chief. To avoid confusion, the Court will refer to Deputy Chief William Dale Finkbeiner as "D. Finkbeiner."

Chief Larry Maxey ("Maxey").[14] After consideration of all record evidence, the Court finds that District and Deputy Chiefs are paid on a salary basis and may be exempt from the payment of overtime if they otherwise meet the requirements of the executive or administrative exemption.

Plaintiffs rely on testimony from former Deputy Chief James Parrott ("Parrott"), who retired in 2005, and former District Chiefs James Bellard ("Bellard"), Edgar Wink ("Wink"), and Bruce Moore ("Moore"), all of whom retired in 2007. The retired Deputy and District Chiefs all testified that firefighters who missed out were laid off or sent home for twelve hours and were then subject to disciplinary docking of twelve hours of pay. Wink specifically testified that the policy included Chiefs. Further, Parrott stated that he was responsible for turning in firefighter hours to payroll and that he would deduct twelve hours from any firefighter who missed out.

However, none of the Chiefs had personally been docked for missing out, and none of the Chiefs testified that they had ever docked another Chief or known a Chief to suffer a twelve-hour docking for missing out. Bellard and Moore admitted that they did not actually know if an employee was ultimately docked twelve hours of pay. Moore further admitted that this twelve-hour docking had been the policy under the former Fire Chief (prior to 2004), but that Chief Bryant operates differently. Moore was aware of firefighters who missed out, but were permitted to stay at work, and the incident was then investigated. He also admitted that Chief Bryant could have ordered that a full day or more of pay be docked.[15]

In contrast, Chief Bryant, who has served as Chief since 1998, testified that Article

---

[14]The City misspelled Maxey's name as "Maxie."

[15]Such a deduction would be in the nature of an unpaid suspension and, thus, permissible under the FLSA. 29 C.F.R. § 541.602(b)(5).

-12-

XXVIII of the MFD Rules correctly reflects the policy for handling of miss outs. Under that policy, which has been in place since 1999, a firefighter who misses out remains at work pending an investigation by the Internal Affairs Division, and, if it is determined that the firefighter missed out, he is subject to a suspension of three days for a first offense. Maxey, who has served as a Deputy Chief since January 15, 2007, and who served as a District Chief for approximately four years prior to 2007, testified consistently that a firefighter who "misses out" continues to work and, after an investigation, he faces a minimum suspension of three days for a first offense, not a partial docking.

The only miss out with which the Court was provided specific details is consistent with Chief Bryant's policy. Plaintiffs submitted the declaration of D. Finkbeiner about a March 2008 incident when a firefighter, Shelby Turner ("Turner"), missed out. According to the declaration, Turner was not allowed to report to work until 8:00 P.M., and D. Finkbeiner personally subtracted twelve hours from the log as discipline. He further declared that "[e]ven if the Chief later determines Turner had a justifiable reason to fail to report . . . Turner will suffer the [twelve-]hour docking." [Doc. No. 73, Exh. 1]. Although Turner is not a Chief, Finkbeiner concluded that the miss out policy "applies to Deputy Chiefs and District Chiefs, as well as their subordinate employees." [Doc. No. 73, Exh. 1].

However, D. Finkbeiner's declaration omits a number of pertinent facts. D. Finkbeiner failed to declare that Chief Investigator David Hill investigated the Turner incident, D. Finkbeiner himself presented a Special Report to Chief Bryant, and Chief Bryant did not dock Turner's pay. The investigation revealed that Turner, who was recovering from a medical

-13-

procedure, and another firefighter, Markus Lenard ("Lenard"), had agreed to trade time. Lenard was scheduled to work the shift before Turner and agreed to stay over for another shift on March 19, 2008. Unfortunately, about 2-3 hours before Turner's shift began at 8:00 A.M., Lenard suffered chest pains and was taken to the hospital. District Chief Harold Arrant and another firefighter, Jeremy Hinton, agreed to stay for Turner until another firefighter, who was ten minutes away, could arrive. D. Finkbeiner refused to allow them to do so.

In his own Special Report, D. Finkbeiner stated that Turner had not properly filled out the trading time form, that he had gone to the doctor on the morning that he had to report, but that he had reported that evening. Finkbeiner recommended that Turner be counseled and docked twelve hours of **vacation** time. After studying the investigation, however, Chief Bryant did not dock Turner's pay or vacation time, and Turner did not suffer any loss in pay or time.

Additionally, even if there is a practice of sending firefighters home for twelve hours, there is no evidence that pay was ever docked in the relevant time period. Chief Bryant must authorize all pay deductions, and he has never authorized a partial pay deduction for missing out. Barbara Ryals, the Fire Chief's secretary, who has prepared the MFD payroll for the past twenty-three years, testified that there are no calculations to be performed with regard to the fixed salary amounts, regardless of hours worked, unless a firefighter is suspended. Anita Eppinette, the Director of Management Information Systems, also testified that the City's payroll program used prior to January 1, 2006, and the program used after that time had the firefighters' semi-monthly salary set as a fixed, predetermined amount generated by the software and hard-wired into the program. Susan Cochran ("Cochran"), a certified public accountant retained by the City, audited

the payroll records of Plaintiffs for the years 2003-2006, and found, based on a representative sample from the list of Plaintiffs, that Plaintiffs "were paid a pre-determined, fixed monthly salary that was paid on a semi-monthly basis, without regards [sic] to hours worked." [Doc. No. 51, Exh. D, ¶ 2]. Cochran "found no exceptions in the method of calculation of the regular pay paid in the sample selected across all years," and, thus, she averred that "the conclusion as to the population is supported by the testing procedures." [Doc. No. 51, Exh. D, ¶ 3]. Finally, even if Plaintiffs could establish that subordinate firefighters are docked twelve hours based on the reported hours on a timesheet, Deputy and District Chiefs do not clock in or out and do not turn in timesheets.

Under these facts, the Court finds that there is no genuine issue of material fact for trial whether Plaintiffs were paid on a salary basis. First, to the extent that the post-August 23, 2004 regulations require an actual disciplinary deduction and to the extent that these regulations are controlling,[16] there is no evidence that any District or Deputy Chief ever suffered a twelve-hour deduction from pay for missing out.

Second, even under pre-August 23, 2004 regulations and the Supreme Court's decision in *Auer*, the Court finds that there was no significant likelihood that District and Deputy Chiefs would suffer a disciplinary docking of twelve hours. As Deputy and District Chiefs did not turn in timesheets, it is highly unlikely that they would have been docked under the method described by Parrott and D. Finkbeiner for deducting hours from a log. More importantly, the objective

---

[16]Based on the Court's conclusion, there is no need to determine whether the Supreme Court's decision in *Auer* or the Secretary's current interpretation of the salary basis test is controlling.

-15-

evidence contained in the payroll records shows that Deputy and District Chiefs were consistently paid the pre-determined, fixed amount of salary on a semi-monthly basis. Thus, the Court can find no "significant" likelihood that Chiefs would suffer a disciplinary docking of twelve hours for a miss out.

Having concluded that Plaintiffs were paid on a salary basis, the Court now must determine if they otherwise meet the requirements of either the executive or administrative exemption.

## 2. Did Plaintiffs Meet the Executive Exemption?

The pre- and post-August 23, 2004 regulations define a bona fide "executive" employee. *Cf.* 29 C.F.R. §§ 541.1(f) (2003) *with* 29 C.F.R. § 541.100 (2009). Under the former regulations, an employee is an "executive" if he (1) is paid on a salary basis not less than $250 per week; (2) manages, as his primary duty, a recognized department or subdivision; and (3) customarily and regularly directs two or more employees. 29 C.F.R. § 541.1(f) (2003).[17] Management duties include, but are not limited to, the following duties:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining

---

[17]In the former regulations, the DOL created a "long" test and a "short" test to determine whether an employee is employed in an administrative or executive capacity. It is undisputed that Plaintiffs met the salary requirements for application of the so-called "short" test. Plaintiffs dispute whether their salary basis of pay was destroyed and whether they otherwise meet the requirements of the executive and administrative exemptions, but they do not deny that they were paid the equivalent of $250 per week.

Under the current regulations, there is only one test.

production or sales records for use in supervision or control; appraising
employees' productivity and efficiency for the purpose of recommending
promotions or other changes in status; handling employee complaints and
grievances; disciplining employees; planning the work; determining the
techniques to be used; apportioning the work among the employees; determining
the type of materials, supplies, machinery, equipment or tools to be used or
merchandise to be bought, stocked and sold; controlling the flow and distribution
of materials or merchandise and supplies; providing for the safety and security of
the employees or the property; planning and controlling the budget; and
monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102 (2009); *see also* 29 C.F.R. § 541.102 (2003) (listing the same duties with

the exceptions of planning and controlling the budget and monitoring or implementing legal

compliance measures).

    Under the current regulations, to be an exempt executive, an employee must be paid on a

salary basis not less than $455 per week, must meet the second and third requirements under the

former regulations, and must also have "the authority to hire or fire other employees," or his

"suggestions and recommendations as to the hiring, firing, advancement, promotion or any other

change of status of other employees" must be "given particular weight." 29 C.F.R. § 541.100(a)

(2009). Thus, an employee's authority to hire or fire or to make recommendations about

another's employment status and have those recommendations be given particular weight was a

factor to be considered by the Court prior to the August 23, 2004 amendments, but is now a

mandatory element of the exemption.

    In determining whether an employee's suggestions and recommendations on employment

matters are given particular weight, the Court considers the following non-exclusive list of

factors:

    whether it is part of the employee's job duties to make such suggestions and

-17-

recommendations; the frequency with which such suggestions and
recommendations are made or requested; and the frequency with which the
employee's suggestions and recommendations are relied upon. Generally, an
executive's suggestions and recommendations must pertain to employees whom
the executive customarily and regularly directs. It does not include an occasional
suggestion with regard to the change in status of a co-worker. An employee's
suggestions and recommendations may still be deemed to have "particular weight"
even if a higher level manager's recommendation has more importance and even
if the employee does not have authority to make the ultimate decision as to the
employee's change in status.

29 C.F.R. § 541.105 (2009).

The City contends that Deputy and District Chiefs are exempt executives under the

relevant tests. Plaintiffs do not apparently dispute that the Chiefs primarily manage and that they

customarily and regularly direct two or more employees. However, Plaintiffs contend that, under

the old and current regulations, the Deputy and District Chiefs are not executives because their

recommendations and suggestions as to the hiring, firing, advancement, promotion or any other

change of status of employees are not given particular weight.

### a. Deputy Chiefs

Based on the undisputed facts, as outlined above, the Court finds that Deputy Chiefs are

exempt executives. First, under the old regulations, when an employee's authority to enact

changes to or to make recommendations about another's employment status was just a factor to

be considered by the Court, the City has established that the Deputy Chiefs' primary duty was

management. The duties of the Deputy Chief show that they supervised the District Chiefs;

performed performance evaluations of probationary subordinate employees; handled employee

complaints and grievances; apportioned work; and provided for the safety and security of the

employees or the property.

Under the amended regulations, the City has a greater burden. Chief Bryant avers that he gives "great weight to and depends heavily on the recommendations of District and Deputy Chiefs," including those recommendations on disciplinary matters and on performance evaluations.[18] [Doc. No. 51, Exh. A]. Chief Bryant's testimony was supported by Maxey, who confirmed that, as a Deputy Chief, he is involved in disciplinary matters and makes recommendations as to the level and type of discipline.

However, Plaintiffs dispute the City's evidence, pointing to the testimony of Parrott and D. Finkbeiner. Parrott testified that he had the discretion and authority to reprimand and counsel the District Chiefs, but that he did not make recommendations about firing. [Doc. No. 51, Exh. S, Depo. of James Parrott, pp. 40, 45]. Parrott also testified that he performed evaluations of probationary District Chiefs, and he does not recall what he put on the evaluations, but that he does not think the evaluation had "any effect on anything." [Doc. No. 51, Exh. S, pp. 50-51]. Parrott admitted that he could go to Chief Bryant with any issues that he wanted or needed to discuss. [Doc. No. 51, Exh. S, p. 40].

D. Finkbeiner testified that he can reprimand subordinates and that he has recommended transfers and disciplinary actions to Chief Bryant. [Doc. No. 51, Exh. O, pp. 33-34]. While Chief Bryant has followed those recommendations with regard to transfers, D. Finkbeiner does

---

[18]It is undisputed that Deputy and District Chiefs could not hire or promote employees, but given the nature of civil service employment, this fact contributes little to the analysis. *See* [Doc. No. 51, Exh. K, Depo. of Ralph May, pp. 16, 18 (Firefighters are civil service employees; promotions are based on seniority among those employees who have taken and passed a civil service examination)]; *see also* [Doc. No. 51, Exh. S, pp. 32-34 (Parrott testified that promotions and hiring decisions are based on civil service examinations)].

not believe that Chief Bryant gives serious consideration to his disciplinary recommendations. [Doc. No. 51, Exh. O, pp. 33-34].

On close review, however, Plaintiffs have failed to controvert the City's evidence. At best, the testimony presented by Plaintiffs shows that Parrott believed that it was his job to take employee disciplinary issues up the chain of command, *see* [Doc. No. 51, Exh. S, pp. 36-37], that Parrott did not believe his evaluations of District Chiefs had an effect, and that D. Finkbeiner did not believe his recommendations about employee discipline carry particular weight. However, Parrott and D. Finkbeiner failed to explain the basis for their subjective beliefs, nor did they give examples supporting their beliefs. In fact, Parrott could not even recall what he wrote on evaluation forms. *See* Fed. R. Evid. 701 (A lay witness's "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, [and] (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue . . ."); *see also United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997) (quoting *Soden v. Freightliner Corp.*, 714 F.2d 498, 511 (5th Cir. 1983) (Under Rule 701, "a lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury."); *Mississippi Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002) ("[T]he witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts.") (citation omitted).

The Court finds that the undisputed evidence in this case is sufficient to find that Deputy Chiefs are also exempt executives under the current regulations. *See* DOL Advisory Letter,

2005-40, 2005 WL 3308611 (October 14, 2005) (Fire Battalion Chiefs are exempt executives where they "manage the administrative and operational functions of the assigned section while integrating the Department's goals into day-to-day operation" and where the duties included "enforcing and implementing rules, regulations, procedures and values of the Fire Department; directing activities of personnel; taking proper action in all emergency situations until relieved by higher ranking officer; coordinating pre-fire planning, company inspection activities, and conducting routine fire cause investigations; preparing, reviewing and processing reports and records; and assisting in necessary research and preparation of budget needs.").[19] The City's Motion for Partial Summary Judgment is GRANTED as to the Deputy Chiefs, and their claim for overtime under the FLSA is DISMISSED WITH PREJUDICE.

### b. District Chiefs

Under the old regulations, Plaintiffs do not even seriously dispute, and the Court finds, that the evidence is sufficient to show that the District Chiefs are exempt executives.

In contrast, however, the disputed evidence does raise a genuine issue of material fact as to whether the District Chiefs are exempt executives under the current regulations. Plaintiffs have presented specific instances and examples to support their contention that the personnel recommendations of District Chiefs were not given particular weight.

Former District Chief Peter Bacle ("Bacle") testified that he gave the lowest rating possible to one individual, yet that individual was promoted anyway. [Doc. No 57, Depo. of Peter

---

[19]Interpretations contained in DOL opinion letters are not controlling, but may be cited as persuasive authority. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000); *Moore v. Hannon Food Serv., Inc.*, 317 F.3d 489, 497 (5th Cir. 2003).

-21-

Bacle, Exh. 8, pp. 29-30]. Former District Chief James Tate ("Tate") requested discipline of an employee several times over a 1-2 year period, but no action was taken prior to Tate's retirement. [Doc. No. 57, Exh. 9, pp. 23-24]. Tate testified that he had gone to a Deputy Chief with personnel issues on other occasions, but no action was taken [Doc. No. 57, Exh. 9, pp. 17-18]. In one incident a Deputy Chief asked Tate to lower a performance evaluation he had completed because "they wouldn't accept it above him." [Doc. No. 57, Exh. 9, p. 21].

Given this testimony, the Court finds that the City has established that the District Chiefs are exempt executives under the old regulations, but has failed to establish as a matter of law that District Chiefs are exempt executives under the current regulations. Thus, District Chiefs are entitled to overtime compensation unless the City shows that they meet the requirements of the administrative exemption.

### 3. Did Plaintiffs Meet the Administrative Exemption?

The Secretary also amended the regulations defining a bona fide administrative employee. *Cf.* 29 C.F.R. §§ 541.2, 541.214(a) (2003) with 29 C.F.R. § 541.200(a) (2009). An employee qualifies for the administrative exemption under both the former and current regulations if (1) the employee is compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $250 per week under the former regulations and not less than $455 per week under the current regulations; (2) the employee's primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to

-22-

matters of significance." 29 C.F.R. § 541.200(a) (2008); 29 C.F.R. § 541.214 (2003).

Activities directly related to management policies or general business are "those type of activities relating to the administrative operations of a business as distinguished from its 'production.'" 29 C.F.R. § 541.205(a). The production activities of a municipal fire department are those related to the prevention and suppression of fires. *See Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir. 1992).

"In general, the exercise of discretion and independent judgment involve the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a) (2009); *see also* 29 C.F.R. § 541.207(a) (2003). The "term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a) (2009); *see also* 29 C.F.R. § 541.207(d)(1) (2003). The exercise of discretion and independent judgment "may consist of recommendations for action rather than the actual taking of action." 29 C.F.R. § 541.202(b) (2009); *see also* 29 C.F.R. § 541.207(e)(1); *see also Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006) (An employee may exercise discretion even if his decisions or recommendations are reviewed by a senior management official and occasionally revised or reversed.); 29 C.F.R. § 541.202(c). In addition, employees may still exercise discretion and independent judgment, even if they consult manuals. *Cheatham*, 465 F.3d at 585.

### a. Deputy Chiefs

The City contends that the undisputed duties of Deputy Chiefs are sufficient to show that they are exempt administrators. Plaintiffs deny that the Deputy Chiefs actually exercise the

discretion and independent judgment necessary for this exemption, but actually perform routine clerical work and exercise discretion only about the appearance of a firefighter or the cleanliness of a fire station, neither of which is a "matter of significance."

Based on the undisputed duties outlined in the depositions of the current and former Deputy Chiefs, the Court finds that the Deputy Chiefs primarily perform office or non-manual work directly related to the operations of the MFD and that they exercise discretion and independent judgment with respect to matters of significance to the fire suppression division and the MFD. Deputy Chiefs are in high stress positions in which they are ultimately responsible for all three fire suppression districts and all personnel within those districts. They exercise discretion and independent judgment in staffing assignments, which ultimately affect both the fire suppression operations and the budget of the department. The duties of the Deputy Chiefs, as a whole, render them exempt administrative employees, as well as exempt executives. Accordingly, the City's Motion for Partial Summary Judgment is properly GRANTED, and Plaintiffs claims DISMISSED, on this alternative basis.

### b.    District Chiefs

The City contends that the undisputed duties of District Chiefs are also sufficient to show that they are exempt administrators. Plaintiffs, on the other hand, characterize the role of District Chiefs as "severely limited." [Doc. No. 57-2, ¶ 16].

The Court disagrees with Plaintiffs and finds that the cited depositions fail to support their characterization. *See id.* (citing [Doc. No. 57, Exhs. 8, 9, & 10]. Former District Chief Bacle, who served between 2003 and 2005, admitted that he was responsible for the actions and

operations of three fire stations under his supervision. [Doc. No 57, Depo. of Peter Bacle, Exh. 8, p. 18]. While he did not train firefighters himself, he admitted that he was responsible for verifying that captains were performing training and that the training was properly conducted, i.e., in accordance with OSHA requirements and with the policies and procedures of the MFD. Current District Chief Dickerson testified that the "training division sets the tone for the day," but he establishes and plans the night drills, multi-company drills, and station drills for the new recruits. He further testified that he oversees the inspections at the fire stations. Finally, Tate, who testified that District Chiefs are "severely limited," made that statement in the context of disciplinary and other employment recommendations. While the Court has found Tate's testimony on disciplinary recommendations relevant to the analysis of the executive exemption, it does not carry the same weight in the Court's analysis of the administrative exemption. *See* [Doc. No. 57, Exh. 9, p. 17].

Based on the evidence presented, the Court finds that the City has met its burden to establish as a matter of law that the District Chiefs primarily perform non-manual work directly related to the operations of the MFD and that they exercise discretion and independent judgment with respect to matters of significance to the fire suppression division and the MFD. District Chiefs are responsible for ensuring the safety and security at the fire stations under their command. They also have the discretion and authority to require the fire stations and captains to engage in fire drills to meet the training requirements and to improve the skills of the firefighters. In addition to their other duties, it is undisputed that District Chiefs attend most emergency calls and serve as an IC, where they exercise discretion and independent judgment to address the needs

of the situation. *See Smith*, 954 F.2d at 299 (District Chiefs who were in charge of emergency scenes were engaged in non-manual work directly related to the firefighting operation and which required the exercise of discretion and independent judgment). Thus, the duties of the Deputy Chiefs also render them exempt administrative employees.

The City's Motion for Partial Summary Judgment is GRANTED as to the District Chiefs, and these claims for overtime compensation under the FLSA are DISMISSED WITH PREJUDICE.

## C.    Plaintiffs' Claim under La. Rev. Stat. § 33:1994(A) is Not Before the Court

In their Supplemental Opposition, Plaintiffs argued that, even if the District and Deputy Chiefs are exempt from the overtime provisions under the FLSA, they are entitled to overtime pay under state law, pursuant to La. Rev. Stat. § 33:1994(A). This claim is not properly before the Court. Plaintiffs attempted to assert this claim on March 19, 2008, in their Fourth Motion to Amend Complaint [Doc. No. 48], but Magistrate Judge Hayes denied their motion [Doc. No. 55]. On appeal, this Court affirmed her denial.

## III.    CONCLUSION

For the foregoing reasons, the City's Motion for Partial Summary Judgment [Doc. No. 51] is GRANTED, and the claims of Plaintiffs Harold Arrant, Bruce Moore, Daniel Saterfield, James Bellard, Ralph May, Michael Meeks, James Tate, Charles McGuire, Bryan Nugent, Larry Maxie, William Dale Finkbeiner, Charles Finkbeiner, Edgar Wink, James Parrott, David Wallace, Tim Dickerson, Mark McConaughey, David Ponthieux, and Peter Bacle for overtime

-26-

compensation under the FLSA are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this _____ 2 3 _____ day of _____ February _____,

2009.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

-27-