U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR 6 – 2009

ROBERT H. SHEMWELL, CLERK
BY _____
                    DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

**MONROE FIREFIGHTERS**                          **CIVIL ACTION NO. 06-CV-1092**
**ASSOCIATION, ET AL.**

**VERSUS**                                        **JUDGE ROBERT G. JAMES**

**CITY OF MONROE**                                **MAG. JUDGE KAREN L. HAYES**

### RULING

This action was brought on June 27, 2006, by approximately 148 former and current

firefighters, who allege that their employer, the City of Monroe (the "City"), failed to pay them

overtime pay, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

Additionally, among other claims, Plaintiffs contend that the City is liable to them under state

law, La. Rev. Stat. 33:1992B, for underpaid longevity pay increases.

In this, the second of five dispositive motions,[1] the City filed a Motion for Partial

Summary Judgment ("Second Motion for Partial Summary Judgment") [Doc. No. 54] on

Plaintiffs' longevity payment claims. The City contends that it properly excluded overtime and

other "non-permanent pay components" from its calculation of Plaintiffs' longevity pay

increases.

Plaintiffs have filed a memorandum in opposition to the City's Second Motion for Partial

Summary Judgment. [Doc. No. 70]. They contend that state law mandates the inclusion of

_____

[1]Plaintiffs have filed their own Motion for Summary Judgment [Doc. No. 84] on the
City's counterclaim. The Court will address the remaining dispositive and other related motions
separately.

overtime and "step-up" pay in the calculation of longevity pay increases.

Having reviewed all briefs filed and evidence submitted, the Court finds that the City's Second Motion for Partial Summary Judgment should be GRANTED IN PART and DENIED IN PART.

## I.    FACTS

The Monroe Fire Department ("MFD") is a department within the City.  The MFD is divided into various divisions as set forth in the MFD Rules and Regulations (the "Rules").  The largest division in the MFD, totaling about 158 employees, is the fire suppression division.[2]

During the relevant time period of this lawsuit, there were several components to the income received by MFD firefighters:

(1)    fixed base salary, as set forth on the City's salary schedule,[3] which is paid twice per month;

(2)    fixed college incentive pay from the City of up to $150 per month, depending on the firefighter's level of education and course of study;

(3)    fixed supplemental pay from the State of Louisiana ("State"), which is paid once per month;

(4)    fixed EMS incentive pay from the City of up to $250 per month, depending on the firefighter's level of specialized certification;

(5)    fixed longevity pay from the City, which is paid twice per month;

(6)    non-fixed scheduled overtime pay for nine (9) hours from the City, at one-half times the regular rate of pay, if a firefighter actually worked between 159 and 168

---

[2]In Article III of the Rules and Regulations, this division is referred to as the fire fighting department. *See* [Doc. No. 51, Ex. A, 108-0979].

[3]Under the City's collective bargaining agreement with the International Association of Firefighters, Local 629, AFL-CIO, ("Union"), employees are paid a base salary according to the salary schedule attached as an appendix. [Doc. No. 54, Exh. A-1, § XXII, p. 8].

hours each work period;[4]

(7)     non-fixed unscheduled overtime from the City, at one and one-half times the regular rate of pay, if a firefighter actually worked more than 168 hours in a work period;

(8)     fixed 6.5 hours pay from the City at half the regular rate, regardless of the hours worked by the firefighter;[5]

(9)     non-fixed step-up pay from the City, in the form of a shift differential premium, if a firefighter "steps up" to perform the duties of a firefighter in the next higher rank.[6]

Barbara Ryals, the Fire Chief's secretary, who has prepared the MFD payroll for the past twenty-

three years, testified that she was taught by former Fire Chief Bill Breland how to calculate the

6.5-hour half-time pay[7] ("half-time pay") and that each firefighter received the half-time pay,

---

[4]Pursuant to 29 U.S.C. § 207(k), the City's fire suppression employees have a 21-day work period. [Doc. No. 54, Exh. A-2, § XVI].

[5]The City ceased paying this amount it characterized as "non-permanent" in September 2007.

[6]The City did not include step-up pay as one of the components of a firefighter's income. While this amount was not fixed, it is certainly undisputed that step-up was a "component" of income if a firefighter stepped up during the year.

[7]Ryals testified as follows:

A:     You take their monthly base and all their incentive pays plus the state pay and multiply it times 12, . . . in other words, twenty-nine-twelve is the number of hours that we used as far as what they work per year and that's based on like 56 hours a week and . . . you multiply that by 12 and you divide it by the twenty-nine-twelve and you get an hourly rate and then you half their hourly rate and then multiply that times 6.5 hours per pay period.

Q:     They don't actually work 56 hours a week. Right?

A:     No, they do not.

regardless of hours worked.

Longevity pay is a reward to firefighters for years of service and seniority. The

November 12, 2002 collective bargaining agreement ("CBA") between the City and the local

Union contains the following provision on longevity pay:

> Beginning January 1, 1981, for the purpose of computing the two percent (2%)
> increase in salary required by State law, Base Pay, Longevity Pay, Supplemental
> Pay, and Incentive Pay will be used.

[Doc. No. 54, Exh. A-1, § XXVII, p. 10].

However, the CBA also recognizes "that employment in the [MFD] is regulated by the

Fire and Police Civil Service Law of the State of Louisiana" and that state legislation and City

ordinances affect the "terms of employment of employees of the [MFD]." [Doc. No. 70, Exh. 2,

Deposition of Steve Nealy, Deposition Exh. 1, ¶ III]. Article III of the CBA states further that

these laws "are fully effective and shall be complied with except as same may be herein

specifically modified." [Doc. No. 70, Exh. 2, Deposition of Steve Nealy, Deposition Exh. 1, ¶

III].

To calculate a firefighter's annual longevity pay, the City uses the firefighter's current

longevity, his current salary, all current year State supplemental pay, all current year college

incentive pay, and all current year EMS incentive pay.[8] The City has never included any form of

overtime payment, step-up pay, or the half-time pay as a component of the longevity pay. Once

___

[Doc. No. 76, Exh. 20, Depo. of Ryals, p. 6].

[8]College and EMS incentive pay were not included in the longevity pay until the
firefighters requested that it be added in April 2005. The City agreed and reimbursed the
firefighters retroactively for the three-year period prior to April 2005, as well as making it a
component of the prospective longevity pay.

-4-

the annual amount of longevity pay is determined, the City divided the total amount into 24 equal payments and paid that amount to the firefighters in each of 24 pay periods.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

"Summary judgment is appropriate [if the summary judgment evidence shows] 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mello v. Sara Lee Corp.*, 431 F.3d 440, 443 (5th Cir. 2005) (quoting FED. R. CIV. P. 56).

If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit credible evidence that negates the existence of some material element of the opponent's claim or defense, or (2) demonstrate that the evidence in the record insufficiently supports an essential element or claim. *Id.* If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). "The nonmoving party, however, 'cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Id.* (quoting *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004)).

### B.    Presentation of Arguments

Before directly addressing the issues in this Motion for Partial Summary Judgment, the

Court must first address how the parties have presented their arguments. In the original memorandum, the City made the following arguments: (1) overtime pay was properly excluded from the calculation of Plaintiffs' longevity pay increases because there is an "unavoidable collision" between the state longevity pay statute and the FLSA[9]; and (2) step-up and half-time pay were properly excluded from the calculation of Plaintiffs' longevity pay increases because they do not constitute a component of "base pay" under La. Rev. Stat. 33:1992B.[10] The City did **not** argue anywhere in the original memorandum, including pages 12-13, that overtime pay was properly excluded from the calculation of Plaintiffs' longevity pay increases because it does not constitute a component of base pay under La. Rev. Stat. 33:1992B. *Cf.* [Doc. No. 79, p. 4 and p. 4 n.8]; [Doc. No. 54-3, pp. 12-13]. The City argued exclusively that overtime pay was properly excluded from the longevity pay calculation because of the alleged conflict with the FLSA.

In Plaintiffs' opposition, they argue that "state law mandates longevity increases based on overtime compensation." [Doc. No. 70, p. 1] (capitalization, underlining and bolding from heading deleted). In the discussion following the heading, Plaintiffs argue that "overtime should be considered when computing longevity" and that "[s]tep-up pay should also be included in the calculation." [Doc. No. 70, p. 5]. Plaintiffs do not differentiate half-time pay from overtime pay. In its next heading, Plaintiffs identify their argument as "Longevity Calculated on Scheduled Overtime Does Not Violate the FLSA." [Doc. No. 70, p. 7] (underlining and bolding from heading deleted). Yet, in the substance of the argument, Plaintiffs do not limit their argument to

---

[9][Doc. No. 54-3, p. 6] ( bolding and underlining deleted).

[10]The City has also objected to the calculation of step-up pay by Plaintiffs' expert, Dr. Steward. Given the Court's conclusion, it need not address this argument.

scheduled overtime, using only the general term "overtime." [Doc. No. 70, p. 7].

Finally, in its Reply, the City argues that Plaintiffs admitted that "non-scheduled, discretionary pay should not be included as a component in the calculation of longevity pay" and reiterates its FLSA conflict argument. [Doc. No. 79, p. 2]. Responding to case law cited by Plaintiffs, the City reiterates its arguments that step-up pay should not be included in longevity pay calculation. The City next argues, for the first time, that a December 21, 2006 Judgment from the Civil District Court in New Orleans precludes using overtime pay as a component of the longevity pay calculation. [Doc. No. 79, p. 4]. Last, the City asks the Court to reject Plaintiffs' *Erie* argument.

Plaintiffs did not request leave to file a sur-reply.

Given the disjointed presentation of the issues to the Court and the differing uses of the term "overtime," it has been difficult to discern and address fully the arguments presented. Nevertheless, the Court has attempted to do so. As this is a matter of state law, the Court will begin with a review of the statute.

### C.    Longevity Pay

Louisiana Revised Statute 33:1992 sets the minimum salaries for certain municipal and parish firefighters. Subsection A of the statute actually sets the minimum salaries. Subsection B, at issue in this case, mandates a two percent annual longevity increase for certain firefighters:

> From and after the first day of August, 1962, each member of the fire department who has had three years continuous service shall receive an increase in salary of two percent and shall thereafter receive an increase in salary of two percent for each year of additional service up to and including twenty years. Both the **base pay** and accrued longevity shall be used in computing such longevity pay.

La. Rev. Stat. 33:1992B (emphasis added).

The Court will first consider whether half-time, step-up, scheduled overtime, and unscheduled overtime pay are part of base pay under La. Rev. Stat. 33:1992B. Then the Court will consider whether its conclusion results in a potential conflict with the FLSA.

### 1. Are the Disputed Payments Part of "Base Pay" to Be Included in the Calculation of Longevity Pay Increases?

Under the rules of statutory construction, if "a law is clear and unambiguous and its application does not lead to absurd consequences," then it "shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. Civ. Code art. 12. Laws on the same subject matter must be interpreted in reference to each other. La. Civ. Code art. 13. An ambiguous statute must be construed in a manner to impart the meaning intended by the legislature and to avoid absurd results. *Roberts v. State Farm Mut. Auto. Ins. Co.*, 27,501 (La. App. 2 Cir. 11/1/95); 662 So.2d 821, 824.

The Louisiana Supreme Court has explained the legislative purpose of La. Rev. Stat. 33:1992, when considered in conjunction with the state supplemental pay statute:[11]

> The principal elements of the Louisiana firemen's minimum and supplemental wage laws, La. R.S. 33:1991 et seq. and La. R.S. 33:2001 et seq., closely resemble the provisions of the [FLSA]. Together our statutes require that a fireman must be paid [a minimum salary] per month and receive one and one-half times his usual pay for any time worked over [designated hours per pay period]. Thus, they establish a floor under firemen's wages and a ceiling over hours that can be

---

[11]This statute provides for additional state pay to firefighters each month.

worked without receiving premium pay, resulting in a single scheme to raise substandard wages first by a minimum wage, and then by increased pay for overtime. The Louisiana statutes affect a narrower class of employees, but there is no difference in principle between our statutes and the federal minimum wage and working condition laws. The motive and purpose of the legislature were plainly to make effective its conception of public policy that substandard labor conditions in city, parish and other local fire departments should be eliminated as being injurious to the safety and welfare of the public as well as detrimental to the health, efficiency and morale of firefighters. Accordingly, we conclude that these provisions constitute an exercise of the legislature's plenary power to enact minimum wage and working condition laws for municipal firemen and policemen. They are remedial and humanitarian in purpose and must not be interpreted narrowly.

*New Orleans Firefighters Ass'n v. Civil Service Com'n of City of New Orleans*, 422 So.2d 402, 412 (La. 1982).

Keeping both the principles of statutory construction and the legislative intent in mind, the Court is asked to determine whether the words "base pay" include any or all of the identified payments. While base pay would seem, at first, to be a clear and unambiguous concept, a review of the applicable state court decisions points out the ambiguity.

In *Williams v. City of West Monroe*, 403 So.2d 842 (La. App. 2 Cir. 8/25/81), firefighters employed by the City of West Monroe brought suit against their employer, in part, because the City failed to include state supplemental pay in the calculation of the firefighter's longevity pay. In that case, the City argued that "base pay" as used in the longevity payment statute meant only the "salary" paid to the firefighters by the City, but the Second Circuit rejected such a "restrictive definition." *Id.* at 844. Instead, the Second Circuit explained:

Prior to 1968, this section provided for an annual increase in salary of two percent. The [last sentence of subsection B] was added in 1968 to provide that accrued longevity be taken into account as part of the employee's salary when each annual increase is calculated. **The term "base pay" is used to distinguish**

-9-

**salary otherwise payable from accrued longevity.** The provision, in effect, makes accrued longevity a part of the employee's total salary and was designed to increase longevity pay, not to limit it. The term "base pay" is in no way used to distinguish city pay from state pay or to exclude state pay from the calculation of longevity pay based on the employee's total salary. **"Base pay" as used in this statute means base salary and includes the base salary paid by both the city and the state.**

*Id.* at 844-45 (emphasis added).

In a second case, *Turner v. City of Shreveport*, No. 15561-CA (La. App. 2 Cir. 8/15/83); 437 So.2d 961, the Second Circuit again considered the longevity payment statute.[12] The Second Circuit rejected a challenge by the City to the district court's determination that "'base pay' for the purpose of calculating longevity increases means actual pay and includes accrued increases." *Id.* at 963. Citing to *Williams*, the Second Circuit found that the district judge did not err "in considering what firemen actually received as their 'base pay' for the purpose of calculating longevity pay increases." *Id.* at 965.

In 2007, the Third Circuit Court of Appeals also issued a decision addressing the statute at issue. *See Lafayette Prof'l Firefighters Ass'n v. Lafayette City-Parish Consol. Gov't*, 2007-755 (La. App. 3 Cir. 12/5/07); 971 So.2d 487. In that case, the firefighters' union and union president brought suit against the city-parish consolidated government regarding firefighters' proper pay rates. In 2002, a tax millage was approved by the voters of Lafayette Parish to support a base pay rate for firefighters of $1833.00 per month. In 2003, firefighters

---

[12]The primary issue before the Second Circuit was whether a city must "expressly specify and describe as *longevity* an exact 2% annual salary raise" in order to comply with La. Rev. Stat. 33:1992. 437 So.2d at 963. The Second Circuit determined that the City of Shreveport, which had provided the annual raises, but failed to describe them as longevity pay increases, was in compliance with the statute. *Id.* at 965.

-10-

agreed to take voluntary step-up promotions in exchange for a pay increase above the $1,833.00

base pay, but, if at any time firefighters refused to accept step-ups, a "trigger clause" provided

that salaries would revert to the $1,833.00 starting point. Firefighters began refusing step-ups in

December 2004, so the city-parish government implemented the trigger clause and reverted to the

starting salary of $1,833.00 per month, adjusted for a two percent increase granted in 2004. The

Third Circuit was asked to determine whether implementation of the trigger clause was in

violation of the provisions of La. Rev. Stat. 33:1992B. In analyzing this issue, the Third Circuit

began with a review of what constitutes "base pay" and found

> that base pay for firefighters employed by the [city-parish government] is the
> $1833.00 funded by the passage of the voter approved tax millage. Although the
> parties chose to alter their pay scale contractually, the agreement did not alter base
> pay, rather it allowed the firefighters to receive pay at a rate in excess of that
> which would have been received using the $1833.00 base. However, the
> agreement reserved that amount as the base, making it clear that **receipt of the
> excess amount was depend[e]nt on the firefighters' complying with the
> agreement to accept step-up promotions.**

*Id.* at 489-90 (emphasis added).

Finally, both parties cite the Court to decisions of the district and appellate courts in a

lawsuit by New Orleans firefighters against the City of New Orleans and the New Orleans Civil

Service Commission. *See New Orleans Firefighters Local 632 v. City of New Orleans*, 980

So.2d 760, 2007-1475 (La. App. 4 Cir. 3/5/08). Having fully reviewed the decisions provided to

the Court and the published decisions otherwise available, the decisions in this case add little to

the analysis.

In 1981, New Orleans firefighters brought suit against the City, challenging a rule of the

New Orleans Civil Service Commission ("Commission")[13] on use of accrued vacation leave. *Id.* at 762. In 1993, the firefighters amended their petition to add a claim that a different Commission rule violated the firefighters' right to longevity pay increases under La. Rev. Stat. 33:1992B. *Id.* Commission Rule IV, § 8.1 provided for two and one-half percent longevity pay increases every five years in conflict with the requirement of La. Rev. Stat. 33:1992B that firefighters be provided two percent increases annually for twenty years beginning the third year of service. *Id.*

The case has a lengthy and convoluted procedural history. After an initial round of interlocutory appeals, the Louisiana Supreme Court remanded for a trial on the merits. *See New Orleans Firefighters Local 632 v. The City of New Orleans*, 2000-1921 (La. 5/25/01); 788 So.2d 1166, 1172. On February 28, 2003, the trial court awarded the firefighters past longevity pay increases beginning with three years prior to the initial date of the lawsuit and determined that the increases must be calculated on a compounded basis using "base pay, State Supplemental Pay, millage pay, and scheduled and unscheduled overtime pay."[14] [Doc. No. 70, Exh. A, ¶¶ (a)-(c), (e), (g)]; *see also* 980 So.2d at 763[15]; *New Orleans Firefighters Local 632, v. City of New Orleans,* No. 2003-CA-1281 (La. App. 4 Cir. 5/26/04); 876 So.2d 211, 215 (The district court "also determined that back longevity raise calculations be performed on a compounding basis on

---

[13]The Commission was later added as a defendant.

[14] The trial court also ordered that the City receive certain credits and the base pay of each class member be adjusted to include longevity pay increases he should have received. [Doc. No. 70, Exh. A].

[15]This Fourth Circuit opinion has a typographical error which refers to "mileage" rather than "millage" payments. It is clear that millage payments were at issue, not mileage.

base or actual pay, which includes City base pay, supplemental pay, millage pay, and scheduled and unscheduled overtime pay."). Plaintiffs rely on the district court's determination that base pay should include scheduled and unscheduled overtime.

However, on appeal, the City of New Orleans contested only the inclusion of state supplemental pay and millage funds in calculating the amount of back pay due to the firefighters for their longevity wage claim, not the inclusion of scheduled and unscheduled overtime pay.[16] *New Orleans Firefighters Local 632, v. City of New Orleans,* No. 2003-CA-1281 (La. App. 4 Cir. 5/26/04); 876 So.2d 211, 217-18. Citing to the Louisiana Supreme Court's prior decision in the case, the Fourth Circuit concluded that it was settled law that state supplemental pay must be included in the firefighters' base pay and that the City "effectively conceded that millage is properly included in base pay" by including that amount in its calculation of overtime. *Id.* at 226.

On remand, the district court in November 7, 2006 Reasons for Judgment found that longevity "raises" should be calculated "on actual pay, including City base pay, State Supplemental Pay, millage pay, and scheduled and unscheduled overtime pay, as per the judgment of February 28, 2003 of this court." [Doc. No. 70, Exh. D, ¶ 6]; *see also* [Doc. No. 70, Exh. D, Subsection (c) of the Judgment]. However, in a December 21, 2008 ruling, the district court granted the City's Motion for New Trial in part and issued a Judgment [Doc. No. 54, Exh. 2], in which he explained the reference to "actual pay" as follows:

When this Court's predecessor wrote 'actual' pay, the Court believes that Judge Belsome was attempting to articulate the actual amount of money that the City

---

[16]The Commission also cited the inclusion of millage and State Supplemental pay as assignments of error 3 and 4, but did not contest the inclusion of overtime. 876 So.2d at 218.

paid any particular firefighter from January 1 until December 31 during the year preceding the judgment. This amount would then be used to calculate the longevity increase. The Fourth Circuit eventually defined this amount as base pay, which included City base pay, millage payments and supplemental pay. [*New Orleans Firefighters Local 632 v. City of New Orleans*, 03-1281, 17 (La. App. 4 Cir. 5/26/04); 876 So.2d 211, 225-26]. The Fourth Circuit's definition of base pay is the law in this case, and the Court will rely upon this definition to address any other perceived ambiguities on this issue.

[Doc. No. 52, Exh. 2]. In a March 2, 2007 Supplemental and Amending Judgment on Longevity

Calculations, the district court specifically found, again, that the City of New Orleans must

"include supplemental pay and mil[l]age pay in calculating the upgrades in Firefighters' pay."

980 So.2d at 765.

Although the case went on appeal to the Fourth Circuit for a third time, the

inclusion of overtime pay in calculating the longevity pay increases was not at issue. Thus, it is

not clear to the Court, at this point, why overtime was determined by the district court to be part

of base pay for longevity calculation, whether it was ultimately part of the longevity pay

calculations, and why the City failed to contest the inclusion of those amounts.

No state court has truly addressed the issues before this Court. Neither of the Second

Circuit decisions addressed the issue of whether to include half-time, step-up, or overtime pay in

the longevity pay calculation. The Third Circuit decision involved a specific agreement between

the firefighters' union and the city-parish government and, under that agreement, found that step-

up pay was not part of the base pay. The *New Orleans Firefighters* decisions in the district court,

Fourth Circuit, and Louisiana Supreme Court did not analyze why overtime pay should or should

not be included as a component of the 33:1992B longevity pay calculation. Those decisions

show only that the trial court included overtime pay in calculating longevity pay increases at one

point, but overtime pay may or may not have been included in the final calculation, and, if overtime pay was included, that inclusion may have been improper.

The state court decisions have provided some guidance. The *Williams* Court instructs that this Court should consider an employee's "total salary" in order to calculate the longevity pay increases and that, in determining this total salary, the term "'[b]ase pay' . . . means base salary and includes the base salary paid by both the city and the state." 403 So.2d at 845. In its later *Turner* case, the Second Circuit explained further that "'base pay' for the purpose of calculating longevity increases means actual pay and includes accrued increases" and that the district court had properly considered "what firemen actually received." 437 So.2d at 963 (internal quotation marks omitted). In the *Lafayette Professional Firefighters* case, the Third Circuit noted that "the agreement reserved [the salary] as the base, making it clear that receipt of the excess amount was depend[e]nt on the firefighters' complying with the agreement to accept step-up promotions."[17] 971 So.2d at 490.

In this case, the parties have a CBA in place which identifies the amount of the salary paid to firefighters, but it is clear that this amount is not the total base pay. [Doc. No. 54, Exh. A]. The CBA currently provides, and the City agrees that it includes "Base Pay, Longevity,

---

[17]Plaintiffs have argued that the *Lafayette Professional Firefighters* case actually supports their claim for step-up pay because the Third Circuit determined that the plaintiffs should receive "two percent of the amount that they were actually paid during the years of higher pay and that further longevity raises must be calculated on the amount actually received." 971 So.2d 491. However, in that case, the consolidated city-parish government actually paid a greater amount as base salary during the years that firefighters agreed to take step-ups. The Court does not read it to say that the type of step-up premiums or shift differentials paid to Plaintiffs in this case should be considered part of base pay.

Supplemental Pay, and Incentive Pay" when calculating the "professional longevity pay" increases. [Doc. No. 54, Exh. A, § XXVII]. However, the statute, not the CBA, controls what constitutes "base pay." Notably, the City concedes that college and EMS incentive pay are now included in the longevity pay calculation, but admits that these "fixed, pre-determined, permanent" amounts were not included in firefighters' base pay until April 2005. [Doc. No. 54-3, pp. 2, 3 n.2].

Relying on the appellate cases and remembering the admonishment of the Louisiana Supreme Court that La. Rev. Stat. 33:1992 "must not be interpreted narrowly," the Court finds that the half-time payments made to the firefighters are also part of Plaintiffs' base pay. While the City argues that half-time pay was issued in "error" and not "permanent," the City paid Monroe firefighters the same 6.5 hours of half-time pay from the mid-1980s until September 2007, after this lawsuit was initiated. [Doc. No. 54, Exh. A, Aff. of Jimmie Bryant, ¶ 11]. It is also undisputed that each firefighter received this half-time pay, regardless of the hours worked and without condition. Thus, the City's Motion for Partial Summary Judgment regarding the half-time pay is DENIED.

On the other hand, the undisputed facts show that step-up assignments were discretionary, were not necessarily based on seniority, and were not a regular part of a firefighter's pay each pay period. The step-up pay was conditioned upon a firefighter's selection for and acceptance of a step-up assignment and depended on the varying needs of the MFD. When a firefighter stepped up by taking on the greater responsibilities and duties of a higher rank, then he received a shift differential or premium to compensate him for doing so, but this additional amount was not a

-16-

part of his base pay for the position and rank he held. In the strictest sense, step-up pay may have been "actually received" by a given firefighter during a given time period, but it is not the type of pay which the appellate courts appear to consider as part of base pay.

Similarly, scheduled overtime was conditioned upon the varying needs of the MFD and not necessarily based on seniority. The Louisiana Supreme Court has compared La. Rev. Stat. 33:1992B to the FLSA as a comparable "minimum wage" statute, and, in that sense, the base pay of Section 1992B is somewhat analogous to the "regular rate" under FLSA. If the base pay is the "floor," whether that floor is used to calculate overtime or longevity pay increases due to a firefighter, then it makes little sense to include overtime in that base. *See New Orleans Firefighters*, 422 So.2d at 412. The Court finds that step-up and scheduled overtime pay should not be included in "base pay," and the City's Motion for Partial Summary Judgment regarding these types of pay is GRANTED.

With regard to unscheduled overtime pay, the City has stated, and Plaintiffs do not dispute, that firefighters were paid one-half their regular rate for nine hours of "scheduled overtime" of 159 to 168 hours per pay period if they actually worked those hours. Plaintiffs worked a 21-day work period, so under the FLSA and under the CBA, non-exempt firefighters must normally be paid one and one-half their regular rates for all work performed in excess of 159 hours. *See* 29 C.F.R. § 553.230 (2009); [Doc. No. 54, Exh. A, § XVI]. Thus, there is an issue under the FLSA whether firefighters were paid correctly for working these hours,[18] but this

_____

[18]The City has filed a separate Motion for Partial Summary Judgment on Set Off, Statute of Limitations and Liquidated Damages [Doc. No. 82] which addresses the payment of these scheduled overtime hours. The Court is not prejudging that motion.

-17-

issue does not change the character of the work itself–hours worked in excess of 159 are overtime and should not be included in Plaintiffs' base pay.[19] For the reasons previously identified, the "scheduled" overtime pay should not be included in Plaintiffs' base pay for calculation of the longevity pay increases, and the City's Motion for Partial Summary Judgment is also GRANTED as to this type of pay.

In summary, the Court finds that the City's 33:1992B longevity pay calculations properly excluded step-up and scheduled and unscheduled overtime pay, but the City has failed to carry its burden on Plaintiffs' claim that the half-time pay is a component of the longevity pay calculation.

### 2. Is There a "Conflict" with the FLSA?

The City also contends that Plaintiffs' claims in this matter set up an unavoidable conflict between 29 U.S.C. § 207(e) of the FLSA and the regulations interpreting that statute and State law on longevity pay, La. Rev. Stat. 33:1992B. The FLSA requires an employer to calculate an employee's regular rate of pay in order to determine the hourly amount upon which overtime compensation is based. Overtime pay is not included in the regular rate calculation, but longevity pay is. *See* 29 C.F.R. § 778.108. If half-time and scheduled and unscheduled overtime pay are components of the longevity pay increase calculation, then the City argues that it will be required to incorporate overtime into its FLSA calculation of an employee's regular rate for purposes of determining overtime compensation, a "'pyramiding that Congress could not have

---

[19]The City has stated that "if a firefighter actually worked between 159 and 168 hours each work period," then he was paid this half-time rate. [Doc. No. 54-3, p. 2]. To be clear, the 159th hour should be included in the base pay, but any hours worked **in excess** of 159 should not be included.

intended.'" [Doc. No. 54-3, p. 7 (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948)).

Having determined that "true" overtime, i.e, hours worked in excess of 159 per work period, should not be included as base pay for purposes of calculating longevity pay increases, the Court finds that the City's argument is moot.

To the extent that the City claims the flat, fixed half-time pay of 6.5 hours was "overtime," the Court disagrees. First, the City has failed to establish that the inclusion of half-time pay in the state-mandated longevity pay increase calculation would result in a conflict of laws problem. Based on the City's argument, a conflict could exist only if the half-time pay was, in fact, overtime pay under the FLSA. Neither Plaintiffs' nor the City's subjective characterization of the half-time pay is legally dispositive.[20] *See* 29 C.F.R. § 778.108 ("The 'regular rate' of pay under the [FLSA] cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract.") (citing *Bay Ridge,* 334 U.S. 446).[21] Erroneously paid or not, half-time

---

[20]Plaintiffs do not contend that half-time pay was properly paid overtime compensation under the FLSA. In the Third Amended Complaint, quotation marks are placed around the term "overtime," indicating that Plaintiffs do not consider the half-time pay to be properly paid overtime, but that it was designated as overtime pay by the City. [Doc. No. 41, ¶ 12]. Plaintiffs specifically state in other paragraphs that the half-time pay was not a premium that is excluded from the definition of "regular rate" and that the "true 'regular rate' upon which overtime should be calculated to each Plaintiff is the combined hourly rate <u>and</u> the fixed 'overtime' pay[]." [Doc. No. 41, ¶¶ 13-14].

[21]Although part 778 refers to a "workweek," 29 C.F.R. § 553.233 provides that "[t]he rules for computing an employee's 'regular rate' . . . set forth in part 778 . . . are applicable to employees for whom the section 7(k) exemption is claimed." Section 553.233 instructs that the words "'work period' should be substituted" wherever the word "workweek" is used.

-19-

pay was a fixed part of the compensation of each firefighter during the entire time period applicable to this lawsuit. Plaintiffs have, at least, raised a genuine issue of material fact for trial that half-time pay, like longevity pay, is remuneration for each work period that should be included in the calculation of the firefighter's regular rate of pay. *See* 29 C.F.R. § 778.200 ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include **all remuneration for employment paid to**, or on behalf of, **the employee**," except for seven specific items.) (emphasis added). If so, there is no potential conflict between state and federal law, and the City is not entitled to summary judgment on this basis either.

## III.    CONCLUSION

For the foregoing reasons, the City's Motion for Partial Summary Judgment [Doc. No. 54] is GRANTED IN PART and DENIED IN PART. Plaintiffs' claims that the City underpaid longevity pay increases mandated by La. Rev. Stat. 33:1992B by failing to include step-up and scheduled and unscheduled overtime pay as components of that calculation are DISMISSED WITH PREJUDICE. Plaintiffs may otherwise proceed with their claim for underpaid longevity pay.

MONROE, LOUISIANA, this _____ 6 _____ day of ___March___,

2009.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

-20-