U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MONROE
MAR 2 5 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| MONROE FIREFIGHTERS ASSOCIATION, ET AL. | CIVIL ACTION NO. 06-CV-1092 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CITY OF MONROE | MAG. JUDGE KAREN L. HAYES |

## RULING

This action was brought on June 27, 2006, by approximately 148 former and current firefighters, who allege that their employer, the City of Monroe (the "City"), failed to pay them overtime pay, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). In their Third Amended Complaint, filed with leave of Court on January 15, 2008, Plaintiffs Edgar Wink, Bruce Moore, John Lyons, Steve Nealy, and James Tate added a claim under Louisiana's Wage Payment Act, La. Rev. Stat. 23:631, *et seq.*, based on the City's alleged failure to pay them accrued vacation pay near the beginning of early 2007.[1]

In this, the fourth of five dispositive motions,[2] the City filed a Motion for Partial Summary Judgment ("Fourth Motion for Partial Summary Judgment") [Doc. No. 66] on Plaintiffs' vacation pay claims. The City contends that Fire Chief Jimmie Bryant ("Chief

---

[1] Plaintiffs listed the City's failure to pay retiring firefighters for accrued vacation time as an act of retaliation in their Second Amended Complaint, but did not assert a claim under the Wage Payment Act until the Third Amended Complaint. *Cf.* [Doc. No.11] *and* [Doc. No. 41].

[2] Plaintiffs have filed their own Motion for Summary Judgment [Doc. No. 84] on the City's counterclaim. The Court will address the remaining dispositive and other related motions separately.

-1-

Bryant") merely "corrected an error concerning when vacation time actually accrues," and that Plaintiffs were properly compensated for their vacation pay upon retirement under both the collective bargaining agreement ("CBA") and state law.

Plaintiffs have filed a memorandum in opposition to the City's Fourth Motion for Partial Summary Judgment. [Doc. No. 89].

With leave of Court, the City also filed a Reply [Doc. No. 101].

Having reviewed all briefs filed and evidence submitted, the Court finds that the City's Fourth Motion for Partial Summary Judgment should be GRANTED IN PART and DENIED IN PART.

**I.     FACTS**

The five Plaintiffs asserting state law vacation pay claims were all long-time employees of the Monroe Fire Department ("MFD") and are members of the Monroe Firefighters Association ("the Union"). All of these Plaintiffs retired near the beginning of 2007 and contend that, at the time of their retirement, they were not properly paid for accrued vacation time.

Plaintiffs' accrual of vacation time is addressed in the CBA between the City and the Union. [Doc. No. 66, Exh. G-1, pp. 12-13]. The CBA provides as follows:

> Section 1. Vacations shall be allotted each employee as follows: first thru fourth anniversary date of continuous service - 9 shifts; fifth thru ninth anniversary date of continuous service - 11 shifts; tenth thru fourteenth anniversary date of continuous service - 14 shifts; fifteen years and above of continuous service - 16 shifts. Unused vacation days may accumulate for a maximum of 40 shifts (960 hours) and be treated the same as prescribed in the City of Monroe Employee Handbook.

[Doc. No. 66, Exh. A-1, §X, p. 3]. Thus, the CBA specifically incorporates the vacation provision in the City's Employee Handbook (the "Handbook"), but only that portion on the accumulation of unused vacation days.

Additionally, the City's Handbook contains the following vacation provision:

> An employee must complete each year of service before he or she will be eligible to accrue additional vacation. There will be no pro-rated vacations. No vacation time will be granted in advance of completing the necessary service.

[Doc. No. 66, Exh. G-1, Handbook, pp. 12-13]. Although the City's Handbook applies generally to all City employees, Plaintiffs point out that the Handbook provisions apply only in the absence of CBA provisions applicable to the firefighters, including any "implied terms." [Doc. No. 89, Plaintiffs' Response to Defendant's Fourth Statement of Uncontested Material Facts, ¶ 7].

Although vacation time accrues on each firefighter's anniversary date of hire, it is the practice of the MFD that all firefighters bid for their vacation dates for the upcoming year in November. The vacation time is then awarded in January. It is undisputed that each of these Plaintiffs had worked for the MFD in excess of fifteen years and, thus, were entitled to receive 16 shifts of vacation time each year. A shift is twenty-four hours, so each Plaintiff accrued 384 hours of vacation time on his anniversary date. Under the CBA, Plaintiffs could carry forward additional shifts of vacation time, for a total of 40 shifts or 960 hours.

According to Chief Bryant, he learned in early to mid-2006 that some firefighters close to retirement were specifically waiting until at or after the first of the calendar year to retire in order to collect a full year of vacation pay. [Doc. No. 66, Exh. A, Chief Bryant Aff. ¶ 5]. According to Chief Bryant, he was unaware until this time that the City credited MFD employees all vacation time on the first of each calendar year. Before this, Chief Bryant had assumed that the MFD credited an employee's vacation time on the employee's anniversary/hire date. However, he attests that the MFD was the only City department to deviate from the anniversary/hire date

-3-

vacation time accrual method. Chief Bryant decided to change the MFD's vacation time policy regarding accrual, use, and payment.

Chief Bryant informed Plaintiffs retiring in 2007 that the payment for vacation time would be prorated from the firefighter's last anniversary date until the date of retirement. The undisputed evidence shows Plaintiffs' dates of employment, retirement, and the number of shifts and hours of vacation time for which Plaintiffs were paid:

| NAME | DATE OF EMPLOYMENT | DATE OF RETIREMENT | SHIFTS/ HOURS |
|---|---|---|---|
| Edgar Wink | July 6, 1970 | January 1, 2007 | 8 shifts/192 hours of pro-rated vacation time plus 16 shifts/384 hours for accumulated vacation time, for a total of 24 shifts/576 hours |
| John Lyons | August 18, 1980 | December 14, 2006 | 40 shifts/960 hours of accumulated vacation time |
| Steve Nealy | August 1, 1979 | February 12, 2007 | 0 shifts/hours (Nealy used 10 shifts/240 hours of pro-rated vacation time after a 12/2006 meeting with Chief Bryant) |
| Bruce Moore | July 24, 1978 | January 8, 2007 | 8 shifts/192 hours of pro-rated vacation time plus 5.5 shifts/132 hours for accumulated vacation time, for a total of 13.5 shifts/324 hours |
| James Tate | August 16, 1979 | April 30, 2007 | 272 hours[3] of pro-rated vacation time plus 13 shifts/312 hours for accumulated vacation time for a total of 584 hours |

---

[3] 16 shifts x 24 hours/shift = 384 vacation hours divided by 12 months/year = 32 vacation hours/month. Tate was paid for approximately 8.5 months between August 16, 2006, and April 30, 2007. The Court has not been given the shift equivalent on Tate because the hours do not divide evenly.

-4-

## II. LAW AND ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate [if the summary judgment evidence shows] 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mello v. Sara Lee Corp.*, 431 F.3d 440, 443 (5th Cir. 2005) (quoting FED. R. CIV. P. 56).

If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit credible evidence that negates the existence of some material element of the opponent's claim or defense, or (2) demonstrate that the evidence in the record insufficiently supports an essential element or claim. *Id.* If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). "The nonmoving party, however, 'cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Id.* (quoting *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 866, 860 (5th Cir. 2004)).

### B. Wage Payment Act

Plaintiffs contend that they were improperly paid their final wages at the time of their retirement under Louisiana's Wage Payment Act. Louisiana Revised Statute 23:631 provides in pertinent part:

> Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay **the amount then due** under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

LA. REV. STAT. § 23:631A(1)(b) (emphasis added). The term "amount then due" includes accrued and uncompensated vacation pay:

> [V]acation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
>
> (a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
>
> (b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.

*Id.* § D. Finally, Section 631 states that the provisions of subsection D "shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy." *Id.* Thus, upon retirement, an employee is entitled to be paid for accrued, but unused, vacation time. *Wyatt v. Avoyelles Parish Sch. Bd.*, 2001-3180 (La. 12/4/02); 831 So.2d 906, 912–14. If the employer fails to compensate his employee for this accrued leave pursuant to the provisions of Section 631, he is liable to that employee. *See* LA. REV. STAT. 23:632.

In analyzing the City's Motion for Partial Summary Judgment, the Court's focus is the plain language of the Wage Payment Act, not the administrative scheduling of vacation time by

the MFD. While the parties argue about the MFD's practice of scheduling vacation time[4] in November and "awarding" that vacation time in January, Plaintiffs are not complaining about when they were allowed to take vacation. They are complaining they were not properly paid the "amount then due" them at the time of their retirement for vacation time they had "accrued the right to take" and for which they had not been compensated as of the date of their retirement.

As to the issue of accrual, the CBA controls. The CBA clearly provides that vacations are "allotted" on the firefighter's "anniversary date." [Doc. No. 66, Exh. A-1, §X, p. 3]. Plaintiffs do not genuinely dispute this fact, but focus on the administrative aspects of the use of vacation time. Because each of the Plaintiffs in this matter had greater than fifteen years of service with the MFD, they earned sixteen shifts or 384 hours of vacation time each anniversary. Also, under the CBA, Plaintiffs were permitted to carry forward accumulated vacation time up to a maximum, including the current year's allotment, of 40 shifts or 960 hours. The Court must, therefore, determine whether there are genuine issues of material fact for trial whether the City paid Plaintiffs correctly.

1. **Vacation Pay Due**

   a. **John Lyons**

Plaintiffs have failed to establish a genuine issue of material fact for trial as to Plaintiff John Lyons ("Lyons"). Plaintiffs admit that the CBA has a "use it or lose it" policy, limiting

---

[4]Although not explained clearly to the Court, at least once the parties refer to the practice of "bidding on" vacation time. In that context, the Court understands, as is often the case with employees who perform shift work, the MFD had some type of seniority system in which firefighters "bid on" the vacation times they wished to take in the upcoming year.

accumulation of vacation time to 40 shifts or 960 hours, and they have not contested the legality of this provision. [Doc. No. 66, Statement of Uncontested Material Facts, ¶ 14; Doc. No. 89, Plaintiffs' Response to Defendant's Fourth Statement of Uncontested Material Facts, ¶ 14]. It is undisputed that the City paid Lyons for the maximum allowable accumulated vacation time of 40 shifts or 960 hours. [Doc. No. 66, Statement of Uncontested Material Facts, ¶ 8; Doc. No. 89, Plaintiffs' Response to Defendant's Fourth Statement of Uncontested Material Facts, ¶ 8]. Accordingly, the City's Motion for Partial Summary Judgment as to Lyons is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

### b. Other Plaintiffs

As to the other Plaintiffs, however, the Court finds a genuine issue of material fact for trial. The City argues strenuously that it has properly paid Edgar Wink ("Wink"), Steve Nealy ("Nealy"), Bruce Moore ("Moore"), and James Tate ("Tate") for all vacation time accrued. Plaintiffs have argued just as strenuously that they were not.

Plaintiffs have admitted that they were properly paid for all accumulated vacation time. They contest only whether Chief Bryant, on behalf of the City, correctly paid them for vacation time that they accrued from their 2005-2006 anniversary dates when they retired in 2007. The Court has reviewed the testimony of the retired firefighters as well as the other evidence. It is unclear to the Court, based on the record, whether or not Plaintiffs were properly paid. For example, Wink testified as follows, under questioning by the City's counsel:

> Q:   Having been a longtime member of the department, do you know when you actually started accruing vacation time?
>
> A:   I can't remember the day we was allowed to start, but we've been doing

>           that for a lot of years.
>
> Q:       Isn't it your actual anniversary date, the date you actually started working
>          and not the calendar year?
>
> A:       Yes.
>
> Q:       So you actually accrued vacation on the basis of your anniversary day?
>          For example, if you started . . . July 1st of 1970 . . . July 1st of 1971 . . .
>          depending on your position you would accumulate a certain number of
>          hours or vacation. Right?
>
> A:       That's correct.
>
> Q:       And you would be allowed to use that the following year? Is that correct?
>
> . . .
>
> A:       Yes.

[Doc. No. 89, Exh. 23, Wink Depo., pp. 19-20]. Counsel later questioned Wink about his claim that he was entitled to payment of sixteen shifts, not eight, at the time of his retirement. Wink explained that he should have received payment for an entire year because vacation time was "a whole year behind." [Doc. No. 89, Exh. 23, Wink Depo., p. 21]. Tate testified that he was on the bargaining committee at one time. He explained that an employee's entitlement to a certain number of vacation shifts was determined as of his anniversary date, but he did not receive those shifts until the "the January after" his anniversary. [Doc. No. 89, Exh. 9, Tate Depo., p. 34]. Finally, Moore, who began employment in July, explained that he worked about one and one-half years before he could take a vacation. [Doc. No. 89, Exh. 17, Moore Depo., p. 23]. Therefore, at the time of his retirement in 2007, Moore believed he should have received payment for an entire year, not one-half a year.

In contrast, Chief Bryant explained that, "[b]y using January 1 of each year as the date for accrual and/or awarding of vacation time, firefighters were improperly being given vacation time without having to complete a year's service from their anniversary date, as is required under Section X of the [CBA]. In effect, then, firefighters were always one year ahead and often used vacation time that they did not earn." [Doc. No. 101, Exh. A, Chief Bryant Aff., ¶ 1]. In his testimony, one Plaintiff, Nealy, added to the confusion by stating, "[the c]alendar year at the first of the year [was when] everybody accumulated their vacation time for that following year."[5] [Doc. No. 89, Exh. 2, Nealy Depo., p. 10]. Moore also stated that Chief Bryant "possibly" made a mistake in calculating vacation pay due to him. [Doc. No. 66, Exh. G., Moore Depo., p. 18].

Chief Bryant may be correct. Plaintiffs may be correct. The Court cannot determine either way from the evidence before it. It appears more likely to the Court that Plaintiffs are correct in their explanation. Using Tate's date of employment, the Court will illustrate. According to the evidence provided, Tate was hired on August 16, 1979, but he would not have accrued any vacation time until August 16, 1980. On that date, he would have accrued vacation time of four shifts. However, as the Court understands the evidence presented, Tate would not have been allowed to take his four shifts of vacation in August of 1980. Instead, he would have to wait until November 1980 to schedule or bid for the use of that vacation time. Then he would not have been able to actually take vacation time until January 1981 or later. If, instead, Tate had retired or quit in January 1981, it would seem that he would have been entitled to payment for

---

[5]Nealy also confirmed, however, that he worked 16 to 18 months before he was permitted to take any vacation. [Doc. No. 89, Exh. 2, Nealy Depo., p. 10].

four shifts. If this practice then carried on through the years, Tate should have had 16 shifts/384 hours available to him to take as vacation in January 2007 or for which he was entitled to payment if he retired in January 2007 or later (but before his next anniversary date). Instead, the City paid Tate for 272 hours of pro-rated vacation time (plus 13 shifts/312 hours for accumulated vacation time) when he retired on April 30, 2007.

For these reasons, the Court finds that Plaintiffs have presented a genuine issue of material fact for trial as to whether Wink, Nealy, Moore, and Tate were properly paid accrued vacation as amounts then due under Louisiana Revised Statute 23:631.[6] The City's Motion for Partial Summary Judgment on the vacation pay claims of these Plaintiffs is DENIED.

### 2. Penalty Wages Due

In the alternative, even if vacation pay was miscalculated, the City contends that Plaintiffs are not entitled to penalty wages because (a) they failed to make a demand for payment and (b) Chief Bryant acted in good faith.

Under Louisiana Revised Statute 23:632,

> Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages **from the time the employee's demand for payment is made** until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or

---

[6]Notably, if Chief Bryant is correct that Plaintiffs had not yet accrued vacation pay, then it appears, at least under the Handbook, that the City was not required to pay Plaintiffs the pro-rated amounts of vacation pay. The City has asserted in its Answer that it overpaid Plaintiffs and have made that assertion part of the basis its counterclaim for payment of a thing not due.

-11-

employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

LA. REV. STAT. 23:632 (emphasis added). "[Section] 23:632 is a penal statute and therefore must be strictly construed. Equitable defenses are available and penalty wages are not to be absolutely imposed irrespective of circumstances." *Doucet v. Plantation Manor, Inc.*, 382 So.2d 984, 985 (La. App. 1st Cir. 1980) (citations omitted). A court may decline to award penalty wages if the employer has a "good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability permits a court to decline to impose penalty wages on an employer." *Wyatt*, 831 So.2d at 917 (citation and internal quotation marks omitted). However, an employer which has a lawful wage payment policy does not assert a good faith defense if it fails "to abide by the terms of its own lawful policy." *Id.*

### a. Demand for Payment

The City contends that Plaintiffs never made a demand for payment, and, thus, are not entitled to penalty damages. Plaintiffs contend that the filing of their Complaint was a sufficient demand as required by statute, that the Union President, Perry Jeselink, made a demand on Plaintiffs' behalf in an October 2006 letter, and that both Wink and Nealy made demands when they met with Chief Bryant and informed him that their vacation pay was being calculated incorrectly.

The Court need not reach whether the letter from Jeselink or the statements of Wink and Nealy were sufficient demands for payment because the Court finds that the City has waived any technical deficiencies.

The Wage Payment Act does not define what constitutes a "demand for payment," but

-12-

there has been some guidance from the Louisiana courts. Both oral and written demands have been deemed to be sufficient, as long as the demand is specific. *See Lambert v. Usry & Weeks*, 94-216 (La. App. 5 Cir. 9/14/94); 643 So.2d 1280, 1281 (Although "[a] statutorily sufficient demand for payment does not have to be in writing, . . . the oral or written request must be fairly precise and certain.").

However, in *Carriere v. Pee Wee's Equipment Co.*, 364 So.2d 555 (La. 1978), the Louisiana Supreme Court found that the technical requirement of a demand for payment may be waived by the employer. In that case, the initial issue on appeal was whether a telephone call by the plaintiff's wife was sufficient to constitute a "formal demand for . . . wages." 364 So.2d at 557. Rather than addressing that issue, the Louisiana Supreme Court held instead:

> . . . the defendant filed a general denial to the plaintiff's claim for unpaid wages. When a defendant denies liability after suit is filed, technical deficiencies in a pre-suit demand are waived by him and will not defeat the imposition of statutory penalties designed to enforce prompt payment.

*Id.*[7]

Later, in *M & D Simon Co. v. Blanchard*, 389 So.2d 401 (La. App. 4th Cir. 1980), on rehearing, the Fourth Circuit Court of Appeals addressed the imposition of attorney's fees, not penalty wages, under Section 632 where there had been no prior demand for payment. 389 So.2d

---

[7]The parties also cited the Court to two Fourth Circuit Court of Appeals cases: *Ruffin v. Klein*, 209 So2.d 45 (La. App. 4th Cir. 1968) and *Mitchell v. Fein*, 281 So.2d 463 (La. App. 4 Cir. 1973). Those cases pre-dated *Carriere* and were decided under the pre-1977 version of Louisiana Revised Statute 23:631, which required demand "at the place where the employee or laborer is usually paid." *Carriere*, 364 So.2d at 556 n. 1 (citing LA. REV. STAT. 23:631 (1950)). For those reasons, the Court finds that neither case provides persuasive authority on the issues before it.

at 402-03. The Fourth Circuit stated that it had "held in [its] original opinion that [the plaintiff's] failure to make demand precludes him from recovering attorney fees," but that its opinion "was inconsistent with *Carriere* . . . , where it was held that a suit for unpaid wages and a denial of liability on the part of the employer is a sufficient basis for the imposition of attorney fees irrespective of lack of a demand prior to the suit being brought." *Id.* Contrary to the City's assertion, both the payment of penalty wages and the payment of attorney's fees are tied to a "demand." *See* LA. REV. STAT. § 23:632 ("Reasonable attorney fees shall be allowed . . . in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of **making the first demand** following discharge or resignation.") (emphasis added).

After a review of the applicable cases, the Court finds that the City is not entitled to summary judgment on this issue. It is undisputed that Plaintiffs properly raised the vacation pay claim and cited Louisiana Revised Statute 23:631 in their Third Amended Complaint. The City then filed an Answer denying liability. While the City argues that the employer in *Carriere* filed only a general denial of liability, the City is clear in its Answer that it also denied liability for any further vacation pay. The City contends that it specifically relied on the failure of Plaintiffs to make a demand for payment to support its Second and Third Defenses. However, in its Second Defense, the City states only that Plaintiffs have failed to state a claim as a matter of law, and in its Third Defense, the City contends that the parties had a "bona fide dispute" as to the amount of vacation pay. [Doc. No. 42, Second and Third Defenses]. Further, in specific answer to Plaintiffs' claims, the City states that "it paid certain, recently retired plaintiffs more vacation

-14-

time than they were due, and the Defendant seeks reimbursement and offset for a thing not due as set forth in the previously filed counterclaim." [Doc. No. 42, ¶ 28]. Thus, the City has denied "liability after [the] suit [was] filed," and "technical deficiencies in [the] pre-suit demand are waived by [it] and will not defeat the imposition of statutory penalties designed to enforce prompt payment." *Carriere*, 364 So.2d at 557. The City's Motion for Partial Summary Judgment on the issue of penalty wages is DENIED.[8]

### b. Good Faith Defense

Finally, the City moves for summary judgment on its good faith defense. The Court finds that there are also genuine issues of material fact for trial on this defense. Based on the Court's review of the evidence on the accrual and awarding of vacation time and the 2007 payments for vacation time to Plaintiffs, the Court cannot conclude as a matter of law that the City had a "good-faith non-arbitrary defense to liability for unpaid wages." *Wyatt*, 831 So.2d at 917. It is not even clear to the Court if the City abided by its own policy, as set forth in the CBA. Therefore, the City's Motion for Partial Summary Judgment on the good faith defense is also DENIED.

## III. CONCLUSION

For the foregoing reasons, the City's Fourth Motion for Partial Summary Judgment [Doc. No. 66] is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to the vacation pay claims of John Lyons, and those claims are DISMISSED WITH PREJUDICE. The

---

[8]The Court expresses no opinion as to whether Plaintiffs are entitled to recover penalty wages, only that they may proceed to trial with this claim.

Motion is otherwise DENIED.

MONROE, LOUISIANA, this 25 day of March, 2009.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE