# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **MONROE FIREFIGHTERS ASSOCIATION, ET AL.** | **CIVIL ACTION NO. 06-CV-1092** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CITY OF MONROE** | **MAG. JUDGE KAREN L. HAYES** |

## <u>RULING</u>

This action was brought on June 27, 2006, by approximately 148 former and current firefighters, who allege that their employer, the City of Monroe (the "City"), failed to pay them overtime pay, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Pending before the Court are dispositive motions filed by the City and by Plaintiffs which are, in part, cross-motions.

The City has filed a fifth Motion for Partial Summary Judgment on Set Off, Statute of Limitations, and Liquidated Damages ("Fifth Motion for Partial Summary Judgment") [Doc. No. 82]. With regard to setoffs, the City contends that it erroneously overpaid Plaintiffs for 6.5 hours of overtime every pay period prior to this lawsuit, for additional unearned overtime in the years immediately prior to this litigation, for excess 2% longevity payments after several Plaintiffs' 23rd year of service, and for overtime payments made to exempt District and Deputy Chiefs. The City moves the Court for a partial summary judgment ordering a setoff for the erroneous payments, as "payment of a thing not due," against any sums found to be owed to Plaintiffs.

With regard to the appropriate statute of limitations, the City contends that it did not

willfully violate the FLSA, and, thus, partial summary judgment should be rendered in its favor, holding Plaintiffs to a two-year period to recover damages for unpaid overtime.

With regard to liquidated damages, the City contends that the evidence shows that it acted in good faith and had reasonable grounds for believing its acts did not violate the FLSA. Therefore, the City also moves for summary judgment on Plaintiffs' entitlement to liquidated damages under the FLSA.

In response to the City's Fifth Motion for Partial Summary Judgment, Plaintiffs have filed both an opposition memorandum [Doc. No. 98] and a Motion to Strike Portions of the Affidavits of Jimmie Bryant and Barbara Ryals (Documents 82-7 and 82-4) ("Motion to Strike") [Doc. No. 87]. Plaintiffs contend that there are genuine issues of material fact for trial on the issues of the proper statute of limitations and liquidated damages.

With regard to the issue of setoffs, Plaintiffs have responded in their opposition memorandum, but they have also filed Plaintiffs'/Counterdefendants' Motion for Summary Judgment as to Defendant's Counterclaim ("Plaintiffs' Motion for Summary Judgment") [Doc. No. 84] for payment of a thing not due.

The City has filed a Reply in support of its Fifth Motion for Summary Judgment [Doc. No. 106], an opposition memorandum to Plaintiffs' Motion to Strike [Doc. No. 102], and an opposition memorandum to Plaintiffs' Motion for Summary Judgment [Doc. No. 99].

Plaintiffs have filed a Reply in support of their Motion for Summary Judgment [Doc. No. 108] and their Motion to Strike [Doc. No. 115].

Finally, the City has filed a Sur-Reply in opposition to Plaintiffs' Motion for Summary Judgment [Doc. No. 119].

Having reviewed all briefs filed and evidence submitted and for the reasons set out below,

the Court rules as follows:  Plaintiffs' Motion to Strike [Doc. No. 87] is GRANTED IN PART

and DENIED IN PART; the City's Fifth Motion for Partial Summary Judgment [Doc. No. 82] is

GRANTED IN PART and DENIED IN PART; and Plaintiffs' Motion for Summary Judgment

[Doc. No. 84] is GRANTED IN PART and DENIED IN PART.

## I.     FACTS[1]

The City and the fire suppression employees of the Monroe Fire Department ("MFD")

have collectively bargained for a 21-day work period.  The City is not required to pay overtime

compensation to fire suppression employees unless they work more than 159 hours in the 21-day

work period.[2]

In 1986, the MFD began using an admittedly incorrect method of calculating and paying

overtime compensation under the FLSA.  They continued to use this method until September or

---

[1]In its previous rulings, the Court has provided more detailed facts regarding this case.
The Court incorporates those facts by reference. [Doc. Nos. 132, 138, 140 & 142].

[2]The CBA provides in pertinent part:

> Section 1.  There shall be three (3) work shifts of twenty-four (24) hours
> each, commencing at 8:00 a.m. and ending at 8:00 a.m. the following morning.
> The firefighter work schedule shall require twenty-four (24) hours on duty on one
> of the three (3) work shifts.  The work schedule shall be rotated by the three (3)
> shifts.

> All firefighters shall be on a twenty-one (21) day work cycle . . . Except as
> provided herein, each twenty-one (21) day cycle shall stand alone for the purposes
> of determining hours worked and/or overtime pay earned.

> All work performed in excess of one hundred fifty-nine (159) hours per
> twenty-one (21) day work cycle shall be paid as overtime at the rate of one and
> one-half (1 ½) times the employees [sic] hourly rate. . . .

[Doc. No. 84, CBA, § XVI].

October 2007.  The City also made certain other payments to firefighters during these years that it contends are erroneous.  In sum, the City allegedly made the following erroneous payments:

(1)     From 1986 through September or October 2007, the City paid firefighters 6.5 hours at half their regular rate, regardless of hours worked;

(2)     Through 2007, the City paid yearly 2% longevity increases beyond the 23rd year of service to 19 Plaintiffs[3];

(3)     During the ten-year period prior to June 27, 2006, the City paid incorrectly calculated overtime compensation to district fire chiefs ("District Chiefs") and deputy fire chiefs ("Deputy Chiefs"), whom this Court has determined were not entitled to overtime payments;

(4)     During the two-year period from June 19, 2004, to June 23, 2006, the City paid firefighters time and one-half pay, incorrectly calculated at the wrong rate,  every time a firefighter worked an extra shift (meaning a shift other than the seven (7) regularly scheduled shifts in a 21-day work period), regardless of the number of hours the firefighter actually worked.

In November 2005, some of Plaintiffs met with Fire Chief Jimmie Bryant ("Chief Bryant"); his secretary, Barbara Ryals; and the City's Personnel Director, Mike Rhymes, to discuss the calculation of longevity pay and overtime compensation.  Although the City agreed to change its longevity pay calculations, it did not change or investigate its payment of overtime compensation.

Beginning in January 2006, Plaintiffs' counsel wrote the City to notify them of Plaintiffs' contentions regarding the improper calculation of overtime compensation.  Although counsel provided legal authority for Plaintiffs' contentions, the City did not respond and took no action to

_____

[3]During the two-year period from June 27, 2004 to June 27, 2006, the City paid those 19 Plaintiffs a total of $26,835.40.  If a third year is included, the City paid the 19 Plaintiffs a total of $36,625.70.

change its practices until September or October 2007.

The City no longer pays the half-time payment and now pays overtime compensation correctly (as far as the Court can tell from evidence provided).

## II.     LAW AND ANALYSIS[4]

### A.     Motion to Strike

The Court will first address Plaintiffs' Motion to Strike the affidavits of Chief Bryant and Ryals.  A motion to strike an affidavit filed in support of, or in opposition to, a motion for summary judgment is governed by Rule 56(e) of the Federal Rules of Civil Procedure.  Rule 56(e), in pertinent part, provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

FED. R. CIV. P. 56(e).  While an affiant is not required to state specifically that the affidavit is based upon his personal knowledge, the affidavit must contain enough factual support for a court to determine that the averments were based upon the affiant's personal knowledge.  *See Thomas v. Atmos Energy Corp.*, 223 Fed. App'x. 369, 374 (5th Cir. 2007).  The factual averments set forth in an affidavit must be admissible in evidence and cannot be conclusory or based on mere information and belief.  *See Richardson v. Oldham*, 12 F.3d 1373, 1378-79 (5th Cir. 1994).  A lay person may offer "opinions or inferences . . . rationally based on [his] perception," which are

---

[4]The Court has stated the standard of review for motions for summary judgment in its rulings on the City's first four motions for partial summary judgment.  The law has not changed.  Therefore, the Court incorporates by reference the standard of review stated in its previous rulings.  *See* [Doc. Nos. 132, 138, 140 & 142].

"helpful to clear understanding of [his] testimony or the determination of a fact in issue," but he may not give an expert opinion. Fed. R. Evid. 701. If a district court determines that portions of an affidavit are inadmissible, it may disregard or strike the inadmissible portions without striking the entire affidavit. *See W.O. Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 531 (5th Cir. 1992).

### 1. Chief Bryant

First, Plaintiffs move to strike paragraph 2 of Chief Bryant's affidavit. [Doc. No. 82, Exh. D., Chief Bryant Aff.]. In that paragraph, Chief Bryant avers as follows:

> Since the mid-1980s, the City has provided each employee of the MFD with 6.5 hours of half-time pay each pay period, regardless of hours worked; that is, this money was not any form of compensation for the performance of any task or tasks whatsoever; it was not a gift, a reward, a merit-based payment, or a payment of any nature linked in any manner to any work performed or services rendered by any employees, including the plaintiffs in the captioned lawsuit. These 6.5 hours of half-time pay was not a supplemental payment by the State of Louisiana; instead, the City, through error, simply added the 6.5 hour sums to the paycheck of each employee at the end of every pay period. The City erroneously believed that payment to MFD employees for the 6.5 hours of half-time combined with paying overtime any time a firefighter would work an extra shift would make the City complaint [sic] with the provisions of the FLSA, regardless of whether the firefighter actually worked 159 hours in a 21-day period. Further, around September 2007, the City stopped providing the 6.5 hours of half-time pay to the MFD employees, including the plaintiffs in this lawsuit. The City will not provide the 6.5 hours of half-time pay to any MFD employees in the future. The 6.5 hours of half-time pay was not a part of an employee's base monthly salary.

[Doc. No. 82, Exh. D., Chief Bryant Aff., ¶ 2].

Plaintiffs attack the personal knowledge of Chief Bryant to support his averments about the 6.5 hour half-time payment ("half-time payment"). It is undisputed that Chief Bryant was never an employee of MFD until he became Fire Chief on July 23, 1998. Prior to that time, Chief Bryant was employed by the Shreveport Fire Department. Therefore, Plaintiffs contend

that Bryant had no personal knowledge "about the history of the 6.5 hours of half-time or the intent of the City before 1998." [Doc. No. 87, p. 2]. Plaintiffs point out that Chief Bryant admitted at his deposition that he "[h]ad no idea" what amount of half-time pay went to the firefighters. [Doc. No. 87, Exh. 1, Chief Bryant Depo., p. 31] (Chief Bryant testified that the "static" amount was received by firefighters whether they actually worked additional hours or not, but that he had "no idea" how much the payment was.).

In response, the City contends that Chief Bryant's personal knowledge about the background and purpose of the half-time payments is derived from his position as Fire Chief for the past ten (10) years. [Doc. No. 82, Exh. D, Chief Bryant aff., ¶1 ("I have worked as the Fire Chief for the MFD, and as Fire Chief, I am responsible for the overall operation of the MFD."); Doc. No. 82, Exh. D, Chief Bryant aff., ¶ 4 ("The statements made herein are on the basis of my personal knowledge and information.")]. The City cites the Court to decisions of the Fifth Circuit standing for the proposition that personal knowledge may be reasonably inferred from an affiant's position and responsibility. Additionally, the City contends that the deposition testimony of Chief Bryant relied on by Plaintiffs refers to the dollar amount of half-time payments made over the years to firefighters, a fact that could not be determined without a review of the payroll records by their expert.

On the face of the affidavit, Chief Bryant has averred that the statements are based on his personal knowledge. As to those statements about the historical nature of the half-time payment, the Court finds that Chief Bryant has properly testified based on his position of responsibility as the Fire Chief of the MFD and as one with complete access to the records of that department,

including payroll records.  *See Carson v. Perry*, 91 F.3d 138, 1996 WL 400122, at * 1 (5th Cir. June 6, 1996) ("We have held that an affidavit can adequately support a motion for summary judgment when the affiant's personal knowledge is based on a review of her employer's business records and the affiant's position with the employer renders her competent to testify on the particular issue which the affidavit concerns.") (citations omitted).  The Court recognizes that Chief Bryant did not specifically aver that he reviewed the business or payroll records of his department or that he otherwise gained knowledge of his department's payroll practices, but the Court finds a sufficient basis to infer that fact from his position, other evidence presented in this case, and his statement that the affidavit is based upon his personal knowledge.  For the same reasons, Chief Bryant could properly aver to the fact that the half-time pay came from the MFD, not from the State of Louisiana.  Finally, he certainly had personal knowledge to testify that the half-time payments were stopped in 2007 and will not be paid in the future.  Plaintiffs' Motion to Strike these portions of paragraph two of Chief Bryant's affidavit is DENIED.

However, the Court finds Chief Bryant lacks personal knowledge to testify that the City "erroneously believed" in the mid-1980s that it acted in compliance with the FLSA by issuing the half-time payment each pay period and "paying overtime any time a firefighter would work an extra shift." [Doc. No. 82, Exh. D, Chief Bryant aff., ¶ 2].  Chief Bryant's position as Fire Chief since 1998 does not provide him with personal knowledge of the alleged intent of the City in the mid-1980s (when he was not even employed by the MFD) in adopting the practice of using a half-time payment each pay period to comply with the FLSA.  Thus, the third sentence of paragraph two of Chief Bryant's affidavit is STRICKEN.

Further, although not specifically objected to, the Court will not consider the second part of the first sentence in paragraph two of Chief Bryant's affidavit and will not consider the final sentence in paragraph two. Whether or not the half-time payment was part of a firefighter's monthly base salary and whether or not the half-time payment was a "gift" or compensation are both legal conclusions and will not support the City's Fifth Motion for Summary Judgment. *See Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) ("Unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.").

### 2. Barbara Ryals

Plaintiffs also move to strike portions of the affidavit of Barbara Ryals ("Ryals"), the Fire Chief's secretary. Plaintiffs argue that paragraph two of Ryals's affidavit is improperly based upon hearsay statements from former Fire Chief Bill Breland. Plaintiffs also argue that Ryals was without personal knowledge to testify in paragraph three to the intent of the City and the City's reliance upon legal counsel.

In paragraph 2, Ryals avers as follows:

As I testified in my deposition, I was in charge of payroll for all fire department employees for the past 24 years. In 1986, I worked for Fire Chief Breland. In 1986, Chief Breland informed me that the [FLSA] . . . started applying to cities and various department in the cities, like the MFD. Chief Breland told me that it was his understanding that the FLSA required the MFD to pay the firefighters 6.5 hours of half-time pay every pay period, regardless of hours worked. We termed the 6.5 hours of half-time pay "FLSA" pay. Additionally, Chief Breland informed me that under the FLSA, I should pay overtime to a firefighter every time the firefighter worked an extra shift. An extra shift is a shift other than a regularly scheduled shift. Since 1986, the Deputy Fire Chiefs would provide me with a Time Substitution Sheet every day, which detailed every extra shift worked by a firefighter. Whenever a firefighter worked an extra shift, I paid the firefighter time and one-half his Regular Rate of pay, but did not include the 6.5 hours in the

calculation of the Regular Rate. On the basis of Chief Breland's direction, I thought that by paying the 6.5 hours of half-time every pay period and time and one-half for every "Extra" shift worked, I was complying with the FLSA requirements. Between 1986 and sometime [sic] in November or December 2005, I paid the firefighters overtime as outlined above, and no firefighter or person ever complained to me about the method of paying overtime. I thought that I was complying with the requirements of the FLSA.

[Doc. No. 82, Exh. A, Ryals's Aff., ¶ 2].

Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Documents containing hearsay statements that would be inadmissible at trial may not be used in an affidavit to support a motion for summary judgment. *See H. Sand & Co., Inc. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2nd Cir. 1991).

The City argues that Ryals's testimony about Chief Breland's statements to her is not hearsay, but merely used to "establish background and the development of payment practices at issue in this litigation." [Doc. No. 102, p. 9 (underlining deleted)].[5]

The Court disagrees with the City's characterization of Ryals's testimony. The statements in her affidavit are not mere background, but are directly relevant to the issue of the MFD's (and the City's) actions in paying firefighters "overtime" in the manner it did from 1986 to 2007. The Court has considered whether Ryals's testimony about Chief Breland's statements are otherwise admissible. The Court finds that under Federal Rule of Evidence 803(3), Chief Breland's statements to Ryals are admissible to show the declarant's, Chief Breland's, then-existing state of mind in asking Ryals to change the payroll calculations in 1986. *See* FED. R. EVID. 803(3) ("A

[5]The Court again requests that the City's counsel ***refrain from using*** underlining, boldface type, and/or italics to emphasize points on every page.

statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, pain, motive, design, mental feeling, pain, and bodily health) but not including the statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will.").[6] Plaintiffs' Motion to Strike this portion of Ryals's affidavit is DENIED.

Plaintiffs also move to strike the following portion of paragraph 3 of Ryals's affidavit:

> . . . the City disagreed with plaintiff's assertions regarding overtime components, and we reasonably relied upon the legal analysis of our counsel in denying their allegations. When further legal review occurred, which indicated that we needed to change the City's overtime analysis and procedures in order to comply with the FLSA, the MFD implemented a new method, which we started in or around September/October 2007 in order to meet the FLSA provisions.

[Doc. No. 82, Exh. A, ¶ 3]. Plaintiffs contend that these statements are not demonstrably based on Ryals's personal knowledge.

The City responds that Ryals testified that she had been "in charge of payroll for all fire department employees for the past 24 years" and thus asserted a sufficient factual basis for her personal knowledge of the City's disagreement with Plaintiffs regarding the calculation and payment of overtime. The City also contends that she had personal knowledge both as the Fire Chief's secretary and as the person in charge of MFD payroll that the City relied on the opinion of legal counsel in "performance of matters affecting a primary responsibility of her job."[7]

---

[6]The Court further notes that Ryals is not testifying to the truth of Chief Breland's statements that this method of calculating payroll was in compliance with the FLSA. Indeed, the City has admitted that it was not.

[7]The City also contends that Ryals never testified about the City's "intent" because that word is not used in her affidavit. [Doc. No. 102, p. 10]. This argument is disingenuous, and the Court has not considered it.

In her affidavit, Ryals specifically testified that she was present at a meeting with Chief Bryant and the City's Personnel Director, Mike Rhymes ("Rhymes"). Rhymes is also a lawyer and familiar to this Court as having practiced in the areas of labor and employment law. The Court finds that Ryals's other statements in her affidavit are sufficient to show personal knowledge for the contested statement. Therefore, Plaintiffs' Motion to Strike this portion of Ryals's affidavit is also DENIED.

**B.      Statute of Limitations under FLSA**

Plaintiffs seek damages for unpaid overtime compensation for the three years preceding the date of the filing of their lawsuit. [Doc. No. 41]. The City moves the Court to determine as a matter of law that the two-year statute of limitations is applicable to Plaintiffs' FLSA claims.

Under the FLSA, a two-year statute of limitations applies to Plaintiffs' claims unless the City's violation is determined to be willful, in which case a three-year statute of limitations applies. 29 U.S.C. § 255(a). The Supreme Court has explained the "standard of willfulness" necessary for the three-year statute of limitations to apply. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-35 (1988). Plaintiffs must establish that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133; *see also Singer v. City of Waco*, 324 F.3d 813, 821 (5th Cir. 2003) (same).

In *Singer*, the Fifth Circuit found that a jury's finding of willful was amply supported by evidence that an assistant fire chief admitted he was aware of the FLSA violations, that the City cancelled a training seminar informing employees about overtime issues, and that the City refused its human resources director's request to determine if its pay practices were in

compliance with the FLSA because the city attorney did not "'want to open that can of worms.'" *Id.*

In *Reich v. Bay, Inc.*, 23 F.3d 110 (5th Cir. 1994), however, the Fifth Circuit found that less egregious actions could also constitute willfulness. In that case, the Fifth Circuit held that the district court properly granted summary judgment for the Secretary of Labor on the issue of willfulness. The Secretary of Labor brought suit against two related companies, Bay and BBI. The Secretary presented evidence that the District Director for the local Wage and Hour office contacted a representative for the companies and told him that the payment practices of Bay and BBI violated the FLSA. *Id.* at 117. Because both companies continued those practices without further investigation, the Fifth Circuit found that their actions "could constitute 'reckless disregard' of the FLSA." *Id.* The Fifth Circuit pointed out that the employer "had sufficient time after hearing from [the District Director] to investigate their payment practices and correct the problem," but did not, and that Bay continued "a substantially similar arrangement with" another company "after BBI became defunct." *Id.*

In this case, the City contends that Plaintiffs will not be able to meet their burden at trial to show that it acted knowingly or with reckless disregard whether its payment practices were prohibited by the FSLA. The City has presented evidence, through the testimony of Ryals, who prepared the payroll for the last twenty-four years, and through the testimony of two experts, who have examined the payroll, that it paid Plaintiffs in a method designed to address overtime. The City issued the half-time payments to Plaintiffs, regardless of hours worked, and also made additional payments in an effort to comply with the FLSA. *See* [Doc. 82, Exh. A., Ryals's Aff.;

Exh. E, Ryals's depo.; Ehx. H, Aff. of Susan C. Cochran (Aff. Ehx. 2); and Ehx. I, Aff. of John R. Page, Ph.D. (Aff. Ehxs. 1-6)]. According to City's experts, Susan Cochran, a certified public accountant ("C.P.A."), and John Page, a C.P.A. with a doctorate in business administration, the City made a number of overpayments to Plaintiffs. Finally, Ryals avers that she never received a complaint about the method of payment until November 2005. Although the City did not believe it was violating the FLSA at that time, it did conduct a later investigation and changed its method of calculations in September or October 2007.

In response, Plaintiffs contend that this case is similar to that of *Reich* because the City left its FLSA compliance to the Fire Chief's secretary and failed to investigate whether its payment was in compliance with the FLSA between 1986 and 2007. Plaintiffs point out that the City took no action even after Plaintiffs' counsel sent the City correspondence citing application to legal authorities in support of their position.

The Court finds that Plaintiffs have raised a genuine issue of material fact for trial. The Court agrees with the City that it has presented evidence showing that it did not act willfully prior to November 2005. However, after that time, the City received correspondence from Plaintiffs' counsel in January, February, and June 2006, but still failed to change its now admittedly incorrect payment practices. *See* [Doc. No. 140, pp. 2-3]; [Doc. No. 98, pp. 22-23]. The City contends that it "believed it was in compliance with the FLSA, and changed its practices when it discovered otherwise," but it has not explained when the investigation was initiated, and why almost two years lapsed from counsel's first notice to the City in January 2006 to the change in the City's calculations in September/October 2007.

The Court offers no opinion as to whether Plaintiffs will prevail on their showing of willfulness at trial, but they have raised a genuine issue of material fact. Therefore, the City's Motion for Partial Summary Judgment on the proper statute of limitations is DENIED.

### C.     Liquidated Damages under FLSA

The City next moves for summary judgment on its contention that it acted in good faith and on reasonable grounds in failing to pay overtime compensation correctly under the FLSA.

An employer who violates the overtime provisions of the FLSA is liable for any "unpaid overtime compensation" and for "an additional equal amount" as liquidated damages. 29 U.S.C. § 216(b). In other words, if an employee proves that his employer violated the FLSA, the liquidated damages award is "automatic." *Bernard v. IBP, Inc.*, 154 F.3d 259, 267 (5th Cir. 1998).

However, the FLSA has "qualified," *id.*, this automatic award to allow an employer to show that "he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. If the employer meets this burden, then "the court may, in its sound discretion," decline to award liquidated damages or reduce the award of liquidated damages. 29 U.S.C. § 260; *see also Singer*, 324 F.3d at 822-23; *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999). "[T]he employer faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA. And, the award of liquidated damages remains within the discretion of the trial court; 'even if the district court determines that the employer's actions were in good faith and based on reasonable grounds, the court has discretion to award liquidated damages.'" *Bernard*, 154 F.3d at 267

(quoting and citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990); *Lee v. Coahoma County*, 937 F.2d 220, 226 (5th Cir. 1991)).

The City has offered evidence that it acted in good faith in attempting to comply with the FLSA by paying firefighters a flat half-time payment each pay period and paying some additional overtime amounts. However, the Court has found a genuine issue of material fact for trial as to whether the City acted willfully. If the City's actions were willful, as defined by the FLSA, then the City could not have acted in "good faith." *See Singer*, 324 F.3d at 823 (When a jury had determined that the city employer acted willfully, "the City could not show that it acted in good faith.").

Further, the Court cannot conclude as a matter of law that the City has met its burden of showing that its actions were "based on reasonable grounds." Ryals has recounted former Chief Breland's statements to her and that, in November 2005, there was a meeting with some of Plaintiffs, but the City has not offered sufficient evidence for the Court to determine the grounds for the City's alleged belief that it was properly paying overtime compensation. The City bears this burden. Accordingly, the City's Motion for Partial Summary Judgment on its good faith defense to an award of liquidated damages is DENIED.

### D.      Payment of a Thing Not Due

The remaining dispute before the Court is based on the City's counterclaim for payment of a thing not due under Louisiana law. In their Third Amended Complaint, all Plaintiffs brought claims against the City under the FLSA for unpaid or underpaid overtime compensation. [Doc. No. 41, ¶ 21]. Additionally, some Plaintiffs brought claims under the FLSA for alleged

retaliation, under state law for underpaid longevity pay due qualifying firefighters, and/or under state law for underpaid vacation pay due recently retired Plaintiffs. [Doc. No. 41, ¶¶ 22, 27-30].

The City filed a counterclaim in which it alleged as follows:

> The individual plaintiffs herein have been overpaid for the last ten years. . .  Any payment to the individual plaintiffs for hours not worked was payment of a thing not due and the City of Monroe desires that judgment be rendered against all plaintiffs who received money for time not actually worked in a sum to be shown after full discovery and trial.

[Doc. No. 3, ¶ 20].

Relying on Louisiana Civil Code article 2299, the City moves the Court for summary judgment on its entitlement to "claim setoffs for the following erroneous payments to" Plaintiffs:

> (a) Payments for 6.5 hours of half-time pay, every pay period, for the 10-year time span from June 26, 1996[,] through June 26, 2006 ($986,017.76);
>
> (b) Payment of unearned overtime for the two-year period of June 19, 2004[,] to June 23, 2006 ($90,733.89);
>
> (c) Additional 2% longevity payments continuing after completion of firefighters' 23rd year of service, during the two-year period from June 27, 2004[,] to June 27, 2006 ($26,835.40), or alternatively, additional 2% longevity payments for the three-year period of June 27, 2003[,] to June 27, 2006 ($36,625.70); and
>
> (d) Overtime payments made to FLSA exempt employees (in an amount to be determined in the event judgment is granted in defendant's favor on this issue).

[Doc. No. 82, p. 9 (emphasis deleted)].  The City's Fifth Motion for Partial Summary Judgment is somewhat unclear.  The City uses the term setoffs throughout its memoranda.  The Court understands the term "setoff" to mean a credit, reducing the damages due to Plaintiffs.  *See* BLACK'S LAW DICTIONARY (8th ed. 2004) (Defining setoff alternatively as "[a] defendant's

counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim," or "[a] debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor; the counterbalancing sum owed by the creditor."). The City's "counterdemand" does not arise from a "transaction independent of [Plaintiffs'] claim"; therefore, the Court can only assume that the City uses the term "setoff" to mean a reduction to the amount of debt it owes Plaintiffs by "the counterbalancing sum owed by" Plaintiffs. However, from the City's memorandum and its counterclaim, the Court understands that the City seeks not only a setoff for "erroneous overpayments," but also a "return of money as payment of a thing not due" for the ten-year period preceding this lawsuit. [Doc. No. 82, p. 1; Doc. No. 3]. Thus, the Court addresses two issues: whether the City is entitled to setoffs from damages owed to Plaintiffs and whether the City is entitled to recover all amounts incorrectly paid to Plaintiffs over the past ten years.

Conversely, Plaintiffs seek summary judgment dismissing the City's counterclaim in its entirety. *See* [Doc. 84].

## 1. Permissibility of State Law Setoffs under the FLSA[8]

Under the partial exemption provided by Section 207(k) of the FLSA, it is undisputed that the City's fire suppression employees collectively bargained for a 21-day work period. 29 U.S.C. § 207(k) (2009). Therefore, the City was not required to pay overtime compensation to fire suppression employees unless they worked more than 159 hours in that 21-day work period.

---

[8]Although the parties have analyzed their claims based on the type of payments made by the City, the Court finds that it must consider the impact of the FLSA on the analysis.

29 C.F.R. § 553.230 (2009). The CBA also provides that the City will pay fire suppression employees one and one-half times their regular rate when they work more than 159 hours in a 21-day work period. [Doc. No. 84, CBA, § XVI].

Plaintiffs work twenty-four-hour tours of duty every third day. If Plaintiffs worked their scheduled hours, then they would be entitled to nine (9) hours of overtime each work period.[9] Instead of paying overtime compensation of one and one-half times the employees' regular rate as provided for by the FLSA[10] and the parties' CBA, between 1986 and September or October 2007, the City paid Plaintiffs a lump sum of 6.5 hours at half their regular rate (although regular rate was calculated incorrectly), each pay period (twice per month), regardless whether they worked in excess of 159 hours. As a result, the half-time payment was not proper overtime compensation, but became part of Plaintiffs' regular rate of pay, which, in turn, should have been used to determine the proper overtime compensation for those hours in excess of 159. *See* 29 U.S.C. § 207(e)(7). The City also paid what it terms "unearned overtime" to Plaintiffs who worked an extra shift ("extra shift payments"),[11] but who had not actually worked in excess of 159 hours. The City also paid some Plaintiffs longevity payments after their 23rd year of

---

[9]Since Plaintiffs worked a 21-day work period where 159 hours is considered the normal work hours, the Court understands that Plaintiffs were regularly scheduled to work 168 hours each work period, which amounts to nine (9) hours in excess of 159 hours.

[10]The Court is aware of exceptions to the typical calculation of overtime, such as the fluctuating work week, but, for purposes of summary judgment, applies the general rule here.

[11]The City refers to these payments as "overtime" payments or compensation, but that term is confusing. The Court refers to these payments as extra shift payments to avoid the suggestion that these were properly earned and calculated overtime compensation payments.

employment when it was not required to do so under state law.[12]  It is undisputed, even by the

calculations of the City's own expert, John Page, that the City still owes Plaintiffs a net amount

for underpaid overtime compensation during the two- or three-year period applicable to their

FLSA claims.

Nevertheless, the City seeks setoffs from the amounts due Plaintiffs by relying on article

2299 for payment of a thing not due.

The City has not cited the Court to a single case in which a Louisiana state or federal

court applied article 2299 to the recovery of backpay under the FLSA, nor has the Court found

such a case.  Though the lack of case law is not determinative, what the City asks the Court to do

is to take a deduction from back pay and, potentially, from liquidated damages, owed to

Plaintiffs.  *See* 29 U.S.C. § 216(b) (Employers who violate the overtime compensation provisions

of FLSA shall be liable for back pay "and in an additional equal amount as liquidated

damages.").  Thus, the Court must consider the propriety of a state law deduction from FLSA-

calculated back pay and liquidated damages under state law.

In *Singer*, the Fifth Circuit considered the action of a district court in reducing the

firefighter-plaintiffs' award of back pay under a theory of unjust enrichment. 324 F.3d at 825-28.

Although not directly on point, the Fifth Circuit's analysis provides some guidance in this case.

The firefighters for the City of Waco were determined to work a fourteen-day work period.  As a

result, they were due overtime compensation if they worked in excess of 106 hours in a single

work period.  Under their work schedule, in a six-week period, the firefighters would work 120

_____

[12]The Court considers payments made to Deputy and District Chiefs separately.

-20-

hours in one 14-day work period; 120 hours in another 14-day work period; and 96 hours in the remaining 14-day work period. *Id.* at 824. The district court found that the City of Waco's method of calculating overtime compensation resulted in "small deficiencies" in the 120-hour work periods, but "considerable overpayments" in the 96-hour work periods. In order to prevent the plaintiffs from receiving "a windfall" and a resulting "unjust enrichment," the district court offset the overpayments made by the City in the 96-hour work periods against the shortfalls in the 120-hour work periods. *Id.* at 825. The district court applied the setoffs to the four years of overtime compensation due the plaintiffs.[13]

On appeal, the Fifth Circuit agreed with the firefighters that the district court did not have authority to apply the state law doctrine of "unjust enrichment" to offset these amounts because it is a "narrow remedy" not meant to be used to avoid a windfall. *Id.* at 826. However, the Fifth Circuit concluded that the district court did have authority to apply certain other setoffs under the FLSA.

First, the Fifth Circuit discussed § 207(h) of the FLSA. That provision allows employers to offset certain overtime premiums against overtime compensation due under the statute, but does not permit a district court to offset overpayments made in some work periods against shortfalls in other work periods. *See id.* at 827; 29 U.S.C. § 207(h)(2). As the *Singer* Court explained:

> Section 207(h) refers to the overtime premiums listed in § 207(e) of the FLSA. That provision refers to payments that are not included in determining the regular

_____

[13]Under Texas law, the plaintiffs were permitted to recover an additional year of overtime compensation. *Id.* at 825 n.6.

rate of pay. See 29 U.S.C. § 207(e). These overtime premiums are extra payments made by employers. These sums are excluded from the total salary (from which the regular hourly rate is calculated) so that they do not improperly inflate the hourly rate.

*Id.* at 827. The Fifth Circuit found that § 207(h) was not implicated because the district court did not treat the overpayments as overtime premiums, but, in fact, included the overpayments made in the 96-hour work periods in determining the firefighters' regular rate of pay. *Id.*

Instead, by permitting offsets, the district court "simply acknowledged that the City already paid the bulk of its overtime obligations" and that when the City of Waco "overpaid its employees in the 96-hour periods, it essentially compensated the employees for the shortfalls in the 120-hour periods." *Id.* The Fifth Circuit characterized the City of Waco's actions as pre-paying the firefighters in 96-hour periods to compensate them for shortfalls in subsequent 120-hour work periods. Thus, the Fifth Circuit found that the district court had not erred by offsetting overpayments paid to the firefighters in some work periods against the shortfalls in other work periods. *Id.* at 828.

Finally, the Fifth Circuit noted its previous decision in *Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974), *rev'd on other grounds* by *McLaughlin*, 486 U.S. at 130, 134 n. 10. In that case, the Fifth Circuit had stated that "'[s]et-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions [.]'" *Id.* at 828 n.9 (quoting *Brennan*, 491 F.2d at 4). The Fifth Circuit explained, however, that in *Brennan*, the setoffs at issue would have caused the awards to many of the employees to drop below the statutory minimum wage. *Id.* Because there was no contention that the firefighters would be

dropped below the minimum wage by the offsets in *Singer*, "Brennan d[id] not prohibit the district court from applying an offset." *Id.*

The Court can glean three general propositions from *Singer*: state law *may* permit setoffs from amounts due to FLSA plaintiffs (depending on the nature of the state law relied upon), the FLSA may also permit certain setoffs, but in no circumstance can the setoffs take an employee below the statutory minimum wage.

Applying the teaching of *Singer*, the Court must now consider the City's request for offsets under article 2299.

### 2. Louisiana Civil Code article 2299

Louisiana Civil Code article 2299 provides:

> A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it.

La. Civ. Code art. 2299. Louisiana Civil Code article 2300 provides further:

> A thing is not owed when it is paid or delivered for the discharge of an obligation that does not exist.

La. Civ. Code art. 2300. "[T]he right to reimbursement conferred by article 2299 exists regardless of whether such payment was made knowingly or through error." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 273 (5th Cir. 2003); *see also In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 329-30 (5th Cir. 2007) (quoting same). Actions for payment of a thing not due are personal actions which prescribe ten years from the date of payment or ten years from the date that plaintiff knew or should have known of the overpayment. La. Civ. Code art. 3499.

-23-

Plaintiffs' response is two-fold: (1) article 2299 does not apply because it is based on equitable principles, and (2) even if article 2299 does apply, they did not receive payment "not owed" because they were owed compensation for work performed and were due overtime compensation under the FLSA and the CBA.

While there is some historical support for Plaintiffs' characterization of article 2299 as "equitable," as the City points out, Louisiana law has an unjust enrichment article, La. Civ. Code art. 2298. The City does not base its argument on that article, but on article 2299. At the outset, the City finds that the plain language of article 2299 supports the City's claim for setoffs and for repayment.

Further, even if article 2299 has equitable underpinnings, equity does not prevent the City's recovery of payment of a thing not due from those Plaintiffs who received half-time, extra shift, and longevity payments to which they were not entitled. The FLSA and the CBA required the City to pay correctly calculated overtime compensation to non-exempt Plaintiffs who worked more than 159 hours in a 21-day work period. Thus, amounts paid to these Plaintiffs were "owed." However, Plaintiffs wish to hold the City accountable under FLSA **and** the CBA for overtime compensation at one and one-half times their regular rate, but also contend that the half-time payment, intended to serve as an overtime payment, was a modification of the CBA to which they are also entitled or owed.[14] Similarly, Plaintiffs contend that they also were entitled to the extra shift payment under the CBA's callback provision. *See* [Doc. No. 84, CBA, § XVIII

---

[14]Plaintiffs cite a number of cases for the proposition that a CBA may be modified by the parties' conduct. The Court agrees with that general principle of law, but finds it inapplicable to the analysis here.

("Any employee who is called back to work or required to stay after 08:00 shall be paid a minimum of four (4) hours at the rate of one and one-half (1 ½) times his regular rate of pay.")]. Plaintiffs do not address the longevity payments in this context.

Not surprisingly, the City disagrees, pointing out that the CBA required it to pay proper overtime compensation of one and one-half times an employee's regular rate for more than 159 hours worked in any work period, not an additional half-time payment. The City also points out that callback pay is a separate form of pay not at issue here.

Applying article 2299 to the claims made by Plaintiffs in this case, the Court finds that the City is generally entitled to setoffs from overtime compensation owed to an individual Plaintiff during the FLSA-compensated period of two or three years by longevity and extra shift payments made to that same Plaintiff and to which that Plaintiff was not entitled. To be clear, the City is not entitled to offset the total amount it paid to Plaintiffs as a group by the amounts due to Plaintiffs as a group. Rather, there must be a case-by-case determination of amounts paid to each individual Plaintiff based upon the hours worked by the individual Plaintiff.[15] To this extent, the City's Fifth Motion for Partial Summary Judgment is GRANTED IN PART, and Plaintiffs' Motion for Summary Judgment is DENIED IN PART.

The City also claims entitlement for repayment of longevity and extra shift payments

---

[15]For example, the City has indicated that it paid some firefighters longevity payments after their 23rd year of service, to which the firefighters were not entitled under La. Rev. Stat. 33:1992B. This Court has determined in a previous ruling that the City was not calculating longevity pay correctly [Doc. No. 138], but by statute the City was not required to pay firefighters longevity payments after their 23rd year. Therefore, the City is entitled to setoffs for longevity pay amounts paid to a firefighter during the time period of recovery for overtime compensation owed to that same firefighter.

made to Plaintiffs during the additional time period outside the statute of limitations for FLSA actions. Although the City may be held liable under the FLSA for two to three years of underpaid overtime compensation, the City seeks to recover payments it made to Plaintiffs for the entire ten-year prescriptive period under article 2299. Although somewhat unclear, the City apparently would like to recover its additional seven or eight years of overpayments (amounts not due Plaintiffs) without paying them for the same seven or eight years of underpayment of overtime compensation (amounts due Plaintiffs). In other words, the City could recover for payment of a thing not due, but Plaintiffs could not recover payment of a thing that was due. The Court finds that the City's recovery under these circumstances would not only frustrate the purposes of the FLSA, but would be in conflict with Louisiana law.

While article 2299 addresses a claim by one party for payment of a thing not due, Louisiana law also addresses the situation where two parties owe each other sums of money. Louisiana Civil Code article 1893 provides:

> Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due. In such a case, compensation extinguishes both obligations to the extent of the lesser amount. Delays of grace do not prevent compensation.

La. Civ. Code art. 1893. As the City points out, Louisiana Civil Code article 1902 provides further that, even if an "obligation claimed in compensation is unliquidated, the court can declare compensation as to that part of the obligation that is susceptible of prompt and easy liquidation." La. Civ. Code art. 1902. What the City has not pointed out, however, is the fact that the Court can also offset a prescribed claim. *See Gulf States Land and Dev., Inc. v. Ouachita Nat'l Bank in*

*Monroe*, 29,134 (La. App. 2 Cir. 4/4/97); 705 So.2d 189.

In *Gulf States*, the Second Circuit Court of Appeals explained the rationale behind this setoff:

> In *Fireman's Fund v. Charles Carter Construction*, 382 F.Supp. 332 (M.D. La.1974), the federal district court recognized that a claim can be compensated legally or judicially even though prescribed. In holding that the prescribed claim could be offset, the federal court referred to the holding in *Tolbird, supra,* that to urge a prescribed claim as a defense pursuant to La.C.C.P. art. 424, the requirements for legal compensation did not have to be present:
>
> > [I]t is apparent that Article 424 of the Code of Civil Procedure does no violence to Article 2209 [now 1893] of the Civil Code, and when it speaks in terms of "obligations" and "causes of action" it directs itself to both legal compensation and judicial compensation as the case may be. It permits the urging of prescribed "obligations" and "causes of action" as defenses whether the conditions of Article 2209 [now 1893] of the Civil Code are met or not.
>
> *Fireman's Fund*, 382 F.Supp. at 338.
>
> Louisiana jurisprudence makes no distinction between a "defense" under La. C.C.P. art. 424 and an "affirmative claim" for legal or judicial compensation. Set-off or compensation, whether asserted by way of affirmative defense, reconventional demand or claim,[16] results in extinguishment of the debt. *See Coburn v. Commercial National Bank*, 453 So.2d 597 (La. App.2d Cir.1984); *Labbe v. Premier Bank*, 618 So.2d 45 (La.App. 3d Cir.1993); *Thibaut v. Thibaut*, 607 So.2d 587 (La.App. 1st Cir.1992). The trial court erred in concluding otherwise.

---

[16]Plaintiffs did not assert article 1893 as an affirmative defense to the City's counterclaim, but Plaintiffs have claimed and put the City on notice in their Answer to the City's Counterclaim, in their Motion to Dismiss, and throughout the numerous pleadings filed in this matter, that the City failed to pay overtime compensation correctly between 1986 and September/October 2007. While Plaintiffs did not seek damages outside the statute of limitations provided by the FLSA, they have consistently maintained that the amounts were "owed" under the FLSA and the CBA. *See, e.g.* [Doc. Nos. 6 & 15]. Thus, Plaintiffs fall within the protection of article 1893.

*Gulf States*, 705 So.2d at 193.

Likewise, in this case, although the City may seek compensation for longevity and extra shift payments made to Plaintiffs to whom they were not owed, any recovery will be offset by amounts the City owed those Plaintiffs for overtime compensation. Accordingly, to this extent, the City's Fifth Motion for Summary Judgment is GRANTED IN PART, and Plaintiffs' Motion for Summary Judgment is DENIED IN PART.

Finally, with regard to the City's lump sum half-time payments, as Plaintiffs points out, the *Singer* Court did not address the impact of 29 C.F.R. § 778.310. That regulation provides:

> A premium in the form of a lump sum which is paid for work performed during overtime hours without regard to the number of overtime hours worked does not qualify as an overtime premium even though the amount of money may be equal to or greater than the sum owed on a per hour basis. For example, an agreement that provides for the payment of a flat sum of $75 to employees who work on Sunday does not provide a premium which will qualify as an overtime premium, even though the employee's straight time rate is $5 an hour and the employee always works less than 10 hours on Sunday. Likewise, where an agreement provides for the payment for work on Sunday of either the flat sum of $75 or time and one-half the employee's regular rate for all hours worked on Sunday, whichever is greater, the $75 guaranteed payment is not an overtime premium. The reason for this is clear. If the rule were otherwise, an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that would be worked. The Congressional purpose to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work would thus be defeated. **For this reason, where extra compensation is paid in the form of a lump sum for work performed in overtime hours, it must be included in the regular rate and may not be credited against statutory overtime compensation due.**

29 C.F.R. § 778.310 (emphasis added). Plaintiffs contend that to allow the City to take a setoff from overtime compensation due for its lump sum payment appears to be in conflict with this

regulation.

In response, the City contends that this regulation was meant to apply to "premium" or "lump sum" payments, and the half-time payments it made to Plaintiffs are neither. The City contends that this regulation was meant to apply to the examples set out in 29 U.S.C. § 207(e)(5)-(7), none of which apply to the half-time payments.

From the Court's review of the language of the regulation itself, this regulation applies to lump sums paid for "work performed in overtime hours." Certainly, the regulation would appear to apply to the half-time payments made to employees who worked during overtime hours. On the other hand, the City seeks setoffs for half-time payments made to employees who did not work during overtime hours.

In either case, the City did not move for summary judgment on setoffs under the FLSA, only under La. Civ. Code art. 2299. Plaintiffs, on the other hand, moved for a complete dismissal of the City's counterclaim. Despite the voluminous briefs in this case and, particularly, on these issues, the Court finds that neither party is entitled to summary judgment on the setoffs against the half-time payments made to Plaintiffs. To the extent that the City seeks summary judgment that it is entitled to setoffs for the half-time payments made to Plaintiffs, its Fifth Motion for Partial Summary Judgment is DENIED. Plaintiffs' Motion for Summary Judgment on the City's claimed setoffs for these payments is also DENIED. The Court will consider further briefing on the conflict between the FLSA and article 2299 prior to trial.

### 3. Application of Article 2299 to State Law Claims

In addition to their FLSA claims, some Plaintiffs have survived summary judgment on

their claims that they were underpaid longevity and/or vacation pay. The City is also entitled to obtain a setoff from underpaid longevity and vacation payments potentially due Plaintiffs on their state law claims. Consistent with the preceding analysis, the City may offset payments it owes individual Plaintiffs on these claims by any payments made to the same individual Plaintiffs for working an extra shift when they had not exceeded the overtime threshold and for longevity when they were past their 23rd year of employment. The City is not entitled to summary judgment on its alleged right to offset half-time payments. The City's Fifth Motion for Partial Summary Judgment and Plaintiffs' Motion for Summary Judgment are GRANTED IN PART and DENIED IN PART based on these claims as well.

### 4. Effect of Overtime Payments Made to District and Deputy Chiefs

This Court has previously found that District and Deputy Chiefs are exempt from FLSA overtime provisions. The City argues that, based on this determination, the City is entitled to a setoff for overtime payments to them. Because the District and Deputy Chief Plaintiffs will not recover any amounts under the FLSA, the City cannot offset its earlier half-time and overtime payments. To the extent that the City contends it should receive a credit or setoff for payments erroneously made to District and Deputy Chiefs for amounts due to other Plaintiffs, the City's argument fails.

The City, theoretically, may be entitled to setoff amounts paid to District and Deputy Chiefs for overtime compensation not owed to them if the same District and Deputy Chiefs to whom these amounts were paid also have claims for underpaid longevity or vacation claims.

However, in their opposition memorandum, Plaintiffs argue that the City is not entitled to

a setoff because La. Rev. Stat. 33:1994(A) requires the City pay overtime to the Deputy and District Chiefs, regardless of the FLSA. [Doc. 98, pp. 13-16]. The Court previously ruled that Plaintiffs failed to timely raise a claim under La. Rev. Stat. 33:1994(A), but the Court's ruling would not prevent Plaintiffs from arguing that the entitlement of Deputy and District Chiefs to overtime payments under state law negates the City's argument for offset.

Louisiana Revised Statute 33:1994(A) provides as follows:

> Overtime compensation for firefighters covered by this Subpart in cities having a population of thirteen thousand or more and that of all parish and fire protection district paid firefighters shall be governed by the provisions of the federal Fair Labor Standards Act, as implemented in 29 CFR Part 553. In the event that such firefighters are subsequently excluded from the overtime compensation provisions of the Fair Labor Standards Act, any firefighters having a work period of at least seven but not more than twenty-eight consecutive days shall receive overtime compensation at the rate of one and one-half times his usual salary, to be determined by reducing his average monthly salary for all hours worked in excess of the following maximum hours standards[.]

La. Rev. Stat. 33:1994(a). For a 21-day work period, a "firefighter," who is "excluded from the overtime compensation provisions" of the FLSA is nonetheless entitled to overtime compensation for hours worked in excess of 159.

Plaintiffs contend that this provision, along with the definition of "fireman" under La. Rev. Stat. 33:1991, entitles Deputy and District Chiefs to overtime compensation under state law. As Plaintiffs correctly point out, the FLSA (and federal law) does not pre-empt more general state overtime compensation laws. 29 U.S.C. § 218. Further, Plaintiffs point to a Louisiana Attorney General Opinion which found that district and assistant fire chiefs in the City of Lafayette were "firemen" within the meaning of La. Rev. Stat. 33:1991. La. Atty. Gen. Op. No. 1989-101 (Feb. 27, 1989). Finally, Plaintiffs argue that the Fifth Circuit has used the terms

"exclude" and "exempt" interchangeably. [Doc. No. 98, p. 19 (citing *Rutland v. Pepper*, 404 F.3d 921 (5th Cir. 2005)].

The City argues strenuously that "[a] real, palpable difference exists between being 'exempt' from the overtime provisions of 29 U.S.C. § 213(a)(1) or 29 C.F.R. Part 553.32(c) and being 'excluded' from the definition of an employee under 29 U.S.C. § 203(e)(2)(C) or being excluded from the overtime provisions under 29 C.F.R. 553.11, or 29 C.F.R. 553.12." [Doc. No. 106, p. 6]. The City contends that the drafters of La. Rev. Stat. 33:1994(A) specifically used the word excluded as opposed to exempted, but the Court is not nearly as convinced as the City.

If the City seeks setoffs for payments for District and Deputy Chiefs, then this issue arises only if these Plaintiffs recover damages for underpaid longevity or for underpaid vacation pay (at the time of retirement). Assuming this is the position taken by the City, the Court DENIES the City's Fifth Motion for Partial Summary Judgment at this time, to be re-urged if, at the conclusion of trial, there are District and Deputy Chief Plaintiffs who have been awarded damages for underpaid longevity or vacation pay. Likewise, Plaintiffs' Motion for Summary Judgment is DENIED.

If the City also seeks to recover overtime compensation paid to District and Deputy Chiefs during the entire ten-year prescriptive period, then the Court will require further briefing on the applicability of La. Rev. State. 33:1994(A) prior to trial. Accordingly, both parties' motions are also DENIED at this time, subject to re-urging at a time to be set by the Court.

### III. CONCLUSION

For the foregoing reasons and as set forth in this Ruling, Plaintiffs' Motion to Strike

[Doc. No. 87] is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED, and the third sentence of paragraph two of Chief Bryant's affidavit is STRICKEN.  Plaintiffs' motion is otherwise DENIED.  However, the Court will also not consider the legal conclusions of affiant Chief Bryant in the second part of the first sentence in paragraph two and the final sentence in paragraph two.

The City's Fifth Motion for Partial Summary Judgment [Doc. No. 82] is GRANTED IN PART and DENIED IN PART.  To the extent that the City seeks a ruling from this Court that it is entitled to setoffs for amounts paid to Plaintiffs for extra shift payments and for longevity payments past a firefighter's 23rd year of employment, the City's motion is GRANTED with the limitations set forth in the Court's Ruling.  The motion is otherwise DENIED.

Plaintiffs' Motion for Summary Judgment [Doc. No. 84] is GRANTED IN PART and DENIED IN PART.  To the extent that the City seeks setoffs from payments it made to Plaintiffs as a group by amounts due to Plaintiffs as a group, Plaintiffs' Motion for Summary Judgment is GRANTED.  All claims and corresponding setoffs will be evaluated on an individual basis.  Similarly, to the extent that the City sought recovery under Louisiana Civil Code article 2299 without application of Louisiana Civil Code article 1893, Plaintiffs' Motion for Summary Judgment is GRANTED.  Any amounts potentially recoverable by the City under article 2299 will be offset by the corresponding claims of Plaintiffs, even if prescribed.  Plaintiffs' Motion for

Summary Judgment is otherwise DENIED.

MONROE, LOUISIANA, this 31st day of March, 2009.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE